JUDGE COFER
delivered the opinion oe the court.
The charter of the city of Henderson provides that the improvement of public ways in said city shall be made and done, as may be prescribed by ordinance, at the exclusive cost of the owners of lots fronting or binding on the way improved, according to the number of feet owned by them respectively.
The common council provided by ordinance for the improvement of Fourth or Railroad Street in said city, and entered into contract with John Haffy to furnish the material and do the whole work, including grading, guttering, curbing, and graveling the carriageway, according to certain specifications contained in the ordinance and contract, at a specified rate per lineal foot, except the grading, which was to be paid for by the cubic yard.
The whole work was to be completed by March 1, 1872, and to be paid for by the city within thirty days after its completion, and the contract stipulated that in case of the failure of the contractor to complete the work by the time agreed upon, a deduction at the rate of ten dollars per day should be made for each day of the continuance of such failure.
The work having been paid for by the city, was received long after the time stipulated for its completion. The cost was then apportioned among the owners of lots fronting and binding on the street, and a precept was issued against the appellee for the part of the cost apportioned against lots *27 owned by him, and he brought this suit against the city and its marshal to enjoin the sale of his property, and to have it adjudged that his property was not liable for any part of the cost of the improvement. The court below granted the relief prayed for, and the city prosecutes this appeal.
Learned counsel for the appellee has urged many objections to the validity of the ordinance directing the improvement to be made, as well as to the various steps taken by the council in regard to the work, but we have only found it necessary to consider a single proposition which, in our opinion, must be decisive of the whole case. We therefore assume, without meaning so to decide, that the ordinance, and all subsequent steps affecting the validity of the contract and the liability of the lot-owners, were regular and valid, and that but for the matter we shall proceed to consider, the adjacent lots would be legally subject to a lien for the cost of the improvement.
The contract, stipulated that the curb- and gutter-stones should be of certain quality and dimension; that the gutters should be laid in a designated form, on a bed of sand four inches deep, and that the street, after being graded, should be covered with gravel to the depth of eight inches next the gutters and ten inches in the center. A railroad track ran along the center of the street through its entire length, and for considerable portions of the distance there were two tracks in the street. Neithér the contract nor the ordinance made any exception on account of these tracks, but both required gravel to be placed over the whole street. The contractor chose to construe the contract as not binding him to place gravel on the center portion of the street, and left a space of perhaps twenty (20) feet through the whole length of the work without putting any gravel on it, and the common council received the work in that condition, although by formal action it construed the contract as binding him to gravel the *28 whole street; but in apportioning the cost among the lot-owners the estimated cost of graveling that part of the street was deducted, and only the residue of the contract price was apportioned.
The common council is the agent of the law, and as such is authorized to contract for the improvement of streets and to make the cost a charge upon the abutting lots. But this authority must be exercised in a prescribed manner, i. e. by ordinance, and the ordinance must prescribe the kind of improvement to be made and the material to be used either by setting them forth in detail or by reference to such details in some other ordinance or writing. This is the mode prescribed by law, and no other mode, however wise and beneficial, can be substituted for it by the city council. The council could not therefore have contracted originally that they would pay the contractor at certain rates for so much of the designated work as he might choose to perform, or as they or their engineer might direct. (Hydes v. Joyes, 4 Bush, 466.) The work to be done must be ascertained and prescribed in the ordinance and contract. "When this is done certain rights, duties, and liabilities become fixed, and thereafter the duty of the city council, so long as that contract remains in force, is to see that it is performed as made, and it can not, by receiving a part of the work and dispensing with the performance of other parts, compel the lot-owners to pay for so much as a delinquent contractor may find it convenient or profitable to perform.
The lot-owners are interested in such contracts. They are subject at all times to be called on to pay for completing the work if it be not done by the first contractor, and they may be compelled to pay more for it than he had undertaken to do it for. He may do that part that is most profitable and leave that in which there is little or no profit or on which he would sustain a loss to be completed under a new contract. Such a system would open a new door for frauds in municipal govern *29 ments which the developments of the last decade warn us can not be safely permitted.
But aside from the impolicy of such a course it is unwarranted.
The council had no power to accept a part performance and to subject the lot-owners to pay for the work performed.
They are not invested with plenary authority. As before remarked they are the agents of the law to make such contracts, and when a valid contract is once made their only authority over it, so long as that contract remains in force and unchanged by regular proceedings, is to see to its performance.
If just prior to the acceptance of the work by the council the contractor had sued either the city or the lot-owners, their obvious and all-sufficient answer would have been, “ you have not performed your contract, and therefore can not maintain an action upon it.”
If, abandoning his contract, he had sued upon a quantum meruit, the answer would have been equally obvious, “you can not recover for work done on a public street except upon a contract.” (Murphy v. Louisville, 9 Bush, 189.)
If then the action of the common council in receiving the work when only partly completed be valid as against the lot-owners, that action had the effect to create upon them by indirection a new liability which, as we have already seen, could not have been done by direct action.
This conclusion may seem harsh and inequitable, but it will be borne in mind that this is not a question for equitable consideration. It is a question of power. The council either had or had not power by its voluntary action in receiving the unfinished work to bind the lot-owners for a heavy burden for which they were not otherwise liable. That it did not have, it is, we think, sufficiently clear. No inequitable result will be produced in this case. The contractor has already been *30 paid by the city, which receives the benefit of the work done as far as it is of a character to be beneficial, and the lot-owners have derived but little, if any, benefit therefrom not common to the whole city.
It is contended, however, that the council having accepted the improvement, that action is conclusive of the question whether the work was performed according to the contract.
This court has several times decided that when work has been accepted by the proper authority of a city, and there is no allegation of fraud or collusion, such acceptance is conclusive evidence that the work was performed according to the requirements of the contract.
But in those cases the question was not whether there had been any performance at all of a material part of the contract, but the question was whether there had not been a defective performance. We certainly never meant to decide that when there has not been even a pretense of performance of a material part of a contract, the acceptance of the work by the city authorities would preclude the lot-owners from showing the fact under proper allegations.
That portion of the work not completed by the contractor was along the railroad track in the center of the street, and its non-completion did not detract from the value of the improvement to the adjacent property, and as by its omission the price was lessened, the lot-owners were not injured by the failure to complete the work. But the obligation of lot-owners to pay for improving streets does not rest alone on the ground that they are benefited by such improvements, and therefore ought in natural justice to pay for them. That they are benefited furnishes the foundation for legislative power to require them to pay, but does not raise an implied assumpsit. There is no common-law liability resting upon lot-owners to pay for the improvement of an adjacent street. Whatever liability they are subject to is created by statute, and all such *31 statutes must be construed most strictly against those asserting claims under them.
Thé charter of Henderson prescribes the mode and manner in which lot-owners may be made liable for street improvements. It declares that when-certain things are done in a certain way they shall be liable. When a valid contract, made pursuant to a valid ordinance, for the improvement of a street, has been completely and substantially performed in all its essential parts, the lot-owners become liable for the price. Until that is done they are under no liability whatever.
The contract for the improvement of Fourth Street never was completed, and the court properly adjudged that the appellee was not liable for any part of the .cost.
Judgment affirmed.