### VOGHT *et al.* v. CITY OF BUFFALO.

(*Supreme Court, General Term, Fifth Department.* April 16, 1891.)

MUNICIPAL CORPORATIONS—STREET ASSESSMENTS—VALIDITY.

In an action to set aside a street assessment it appeared that the common council of defendant city adopted a resolution for the paving of the street in question, 42 feet wide, and directed the city engineer to advertise for bids. The lowest bid was accepted by the council for paving the street 42 feet wide. The engineer made the contract for paving the street 37 feet wide, omitting the space of 5 feet between the rails of the street-car track thereon. *Held,* that the contract was unauthorized and void, and the assessment would be set aside.

Appeal from special term, Erie county.

Action by Valentine Voght and others against the city of Buffalo to set aside an assessment. There was a judgment for defendant, and plaintiffs appeal.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Frank R. Perkins,* for appellants. *Philip A. Laing,* for respondent.

CORLETT, J. On the 6th day of July, 1887, the common council of the city of Buffalo by resolution conferred authority upon the Buffalo East Side Street-Railway Company to construct its road from the Williamsville road westerly along Broadway with double tracks, to Washington street. Double tracks were constructed from Washington street to Fillmore avenue, from thence easterly but a single track. The width of the track is about five feet. On the 20th day of June, 1887, the common council of the city, by a two-thirds vote, adopted a resolution to the effect that the city intended to order Broadway repaved 42 feet wide, with first-class Medina sandstone, the pavement to be from Fillmore avenue eastward to the end of the sewer in Broadway, and the city engineer was directed to prepare plans and specifications and advertise for bids. On the 16th of January, 1888, the city engineer reported to the council various proposals made to him to repave Broadway 42 feet wide in the manner specified by the common council. Albert Krause offered to do the job for $40,270. His was the lowest bid. The council decided to accept it for repaving Broadway 42 feet in width. The engineer made a contract with Krause for the amount of his bid to repave 37 feet wide, instead of 42, as authorized. The 5 feet omitted was the space between the tracks of the street railroad, which has not been repaved. The assessment made was to collect this amount for repaving 37 feet in width. The common council at no time authorized the repavement to be less than 42 feet.

The assessors estimated the land on the north side of Broadway at $1.25 more per foot than upon the south side, upon the ground that the south side was incumbered by track, while the north side was not. No resolution was passed by the common council specifying the extent to which either side would be benefited in proportion to the other. The determination of that question was by the assessors, and the result is simply indicated by the way in which the assessment was made. This action was brought by the land-owners along the street to set aside the assessment based upon the alleged jurisdictional irregularities. The central one is that the 37-feet repavement was never authorized by the city. It is further claimed that the assessment is irregular and void because the assessors proceeded upon a wrong theory in estimating the value of the land, the claim on the part of the plaintiff being that the street railway had power at any moment to double its track, and when it did the reasons for discrimination between the value of the north and south lands would be removed. It was further insisted that the publication was defective in not being published five consecutive days, it being omitted on Sunday. A trial was had at special term, which resulted in a dismissal of the complaint, and from the judgment entered upon this decision the plaintiffs appealed to this court.

The city engineer had no power to dispense with any requirement which the corporation imposes. *Smith* v. *New York*, 10 N. Y. 504–508; *Smith* v. *City of Newburgh*, 77 N. Y. 130; *In re Garvey*, Id. 523. All the cases are to the same effect. *In re Burmeister*, 56 How. Pr. 416; *Ziegler* v. *Flack*, 54 N. Y. Super. Ct. 69; *Ottendorfer* v. *Fortunato*, 4 N. Y. Supp. 629; *McDonald* v. *Mayor*, 68 N. Y. 23–28. No reason is seen why the engineer might not have made a contract for paving 10 feet instead of 37. If he had power to omit 5 feet, he could have omitted as much as he pleased. This point was decided in *Cram* v. *City of Buffalo*, affirmed, 36 Hun, 638. The justice at special term stated: "If the sewer could be commenced eight hundred feet from the point mentioned, and still be within the declared intention, it could be commenced eight thousand feet from that point, or any other place along the designated line." The familiar rule that a statute which can result in the taking of property and divesting of title must be strictly construed is applicable to the case at bar. *Stebbins* v. *Kay*, 123 N. Y. 31, 25 N. E. Rep. 207; *In re Pennie*, 45 Hun, 391, affirmed, 108 N. Y. 364, 15 N. E. Rep. 611. All the cases are to the same effect. *Merritt* v. *Portchester*, 71 N. Y. 312; *In re Commissioners of Central Park*, 35 How. Pr. 277; *State* v. *Jersey City*, 27 N. J. Law, 536; *City of Henderson* v. *Lambert*, 14 Bush, 24; *Owners of Ground, etc.,* v. *Mayor, etc., of Albany*, 15 Wend. 374. In *Gilmore* v. *City of Utica*, 121 N. Y. 561, 24 N. E. Rep. 1009, it was held that it is the duty of a city to keep its streets in repair, and it cannot relieve itself from this liability because certain street railways are required to bear a portion of the expense. To the same effect is *People* v. *Brooklyn*, 65 N. Y. 349. After repaving, the city could recover from the railway company its share of the expense. *City of Brooklyn* v. *Railroad Co.*, 47 N. Y. 475. In *People* v. *Gilon*, 11 N. Y. Supp. 512, it was held that an assessment of adjoining owners, including tracks which should have been assessed to the street railway, would be out of proportion, and was set aside on that ground. The question came up there on *certiorari*. The city should have exacted from the street railway its just proportion of the expense for repaving. Perhaps the counsel assume that after the completion of the job that corporation would pay its proportion of the $40,270. The trouble in the case at bar is that the contractor got the full sum for repaving 37 feet, when in fact no contract was authorized to pave less than 42 feet. Whether the council would have accepted Krause's bid at the sum named for paving 37 feet is not before the court. No such contract was contemplated or authorized by the council. If the engineer, under authority to pave 42 feet for a

certain sum, could make a contract to pave a less width for the same price, it is evident that competitive bids would be useless. The engineer could secure the job to a favorite contractor. Some evidence was admitted on the trial showing that it was the custom or practice to omit from the contract the space between the rails. It is unnecessary to say that the right to take the property of a citizen cannot be determined by custom or usage. The power is statutory, and cannot be divested except by complying with its provisions. No reasons are shown for assessing the lands on the north side of the street $1.25 more than those on the south side. The railroad had as much right to occupy the north side of the road for its tracks as the south side. The exercise of this privilege by the company rested in its own discretion, and the lands on the north side could not be benefited because a track which the company had a right to lay had not actually been built. There was no reason for making a discrimination between the value of the two sides upon that ground. The assessors therefore (assuming they had power) adopted an erroneous principle in imposing heavier burdens upon the lands on the north side than those upon the south. For the reasons above stated the judgment must be reversed, and a new trial granted. All concur.