Fox v. Middlesborough Town Company.

---

CASE 42—PETITIONS EQUITY—DECEMBER 11.

# Fox v. Middlesborough Town Company.
## Same v. Same.
## Same v. Same.
# Fox & Davidson v. Middlesborough Town Company, &c.

APPEAL FROM BELL CIRCUIT COURT.

1. STREET IMPROVEMENTS.—Under a city charter providing that the original construction of streets shall be "at the exclusive cost of the owners of lots in each fourth of a square, to be equally apportioned by the council, except as to corner lots," etc., it is not essential that an ordinance providing for such an improvement should designate the manner in which the cost of the improvement is to be apportioned; and if in attempting to do so the ordinance does not follow the method of apportionment provided by the charter, it is not rendered invalid, provided there is nothing to mislead lot owners.

   In this case the fact that the ordinance provided that the property fronting the street should pay for the improvement did not render it invalid.

2. SAME—PUBLICATION OF ORDINANCE.—To create a lien for the cost of street improvements, publication of the ordinance providing for the improvement must be made in the mode prescribed by the city charter, and the fact that the lot owner sought to be charged has witnessed the progress of the work from its beginning to its completion, can not work an estoppel.

3. SAME.—Under a city charter providing that no ordinance for any original improvement "shall take effect until it is passed by a yea and nay vote at two meetings of the board of council, at least two weeks apart, and until the ordinance as first passed shall have been published at least one week in some newspaper in said city," a publication between the time of the first and the time of the second passage

Fox v. Middlesborough Town Company.

of the ordinance is not required, but only a pub ication for one week after the second passage.

4. SAME.—Where a contract has been made for grading and macadamizing a street and the contractor has fully complied with his contract he may enforce his lien, although no curbing or guttering has been done, that not being a part of his contract, and the council having the right to contract merely for the grading and macadamizing under the provision of the charter conferring power upon the council "to cause any of the public ways to be graded, paved, macadamized, curbed or guttered in such a manner as it may by ordinance prescribe."

W. O. BRADLEY, Z. H. CRUTCHER AND J. G. FITZPATRICK FOR APPELLANTS.

1. The language of the charter of the city of Middlesborough that all unpaid warrants growing out of the same contract should be joined in one suit is merely directory and permissive, and such joining is not necessary. The amended petition alleged that all had been joined and the objection can not be raised. (Vol. 1, Acts 1889–90, pp. 686–7, sec. 111, subsecs. 6 and 7.)

2. Though the rule as to the exercise of delegated authority is that it must be strictly followed, still the sovereign power may change or abrogate this rule as was evidently intended in the charter of the town of Middlesborough, and no error in the proceedings of the council in passing an ordinance authorizing certain work to be contracted for shall defeat the payment therefor after the work has been done. (City of Henderson v. Sutton, 7 Ky. Law Rep., 378; Bradley v. McAtee, 7 Bush, 667; Broadway Baptist Church v. McAtee, 8 Bush, 508, 515; Whitefield v. Kipple, 11 Ky. Law Rep., 386; Craycraft v. Selvidge, 10 Bush, 701; Preston v. Roberts, 12 Bush, 589; City of Henderson v. Lambert, 14 Bush, 24–31; Elliott's Roads and Streets, 351, 369, 386, 387, 423; Charter of the City of Middlesborough, secs. 106, 109, 111; Caldwell v. Rupert, 10 Bush, 179.)

3. The provision of the charter that the warrants shall be *prima facie* evidence that the contract was complied with is not unconstitutional. (Emory v. San Francisco Gas Co., 28 Cal , 375; Robinson v. City of Milwaukee, 61 Wis., 485; Herman on Estoppel, vol. 2, sec. 1221; Elliott on Roads and Streets, 415; Johnson v. Ferrill, 8 Ky. Law Rep., 216; Constitution of Ky , art. 2, sec. 29; City of Louisville v. Cochran, 82 Ky., 15.)

4. Under the provision of the charter that " no ordinance for any original improvement mentioned in this charter shall take effect until it is passed by a yea and nay vote at two meetings of the board of council, held at least two weeks apart * * * and until the ordinance as first passed shall have been published for at least one week in some news-

Fox v. Middlesborough Town Company.

paper in said city," a publication between the two passages is not required. (Henderson v. Lambert, 14 Bush, 28; Broadway Baptist Church v. McAtee, 8 Bush, 508; Preston v. Roberts, 12 Bush, 589; Elliott on Roads and Streets, 415–420; Acts 1889–90, vol. 1, secs. 3, 7, 8, 99, 106, 107, 109.)

5. Where the petition shows facts which would work an estoppel it is not necessary to especially plead the estoppel. The property owners having knowledge of the street improvements and having suffered them to be carried on, are estopped to contest the validity of the ordinance authorizing them. (Ferguson v. Landram, 5 Bush, 230; Barrett v. Godshaw, 12 Bush, 592; Nevin v. Roach, 86 Ky., 492; Herman's Estoppel, 20, 721, 722, 787, 1221, 1276; Dillion v. Crooke, 11 Bush, 321.)

6. The charter having provided the manner of apportionment of the cost of street improvements, a different method appointed in the ordinance is mere surplusage and does not make the ordinance invalid. (Preston v. Rudd, 7 Ky. Law Rep., 806.)

Under the power granted by the charter to the council to contract for grading, macadamizing, curbing and guttering the streets, the council may contract for grading and macadamizing only, and the contractor may enforce payment when he has completed the work which he contracted to do. (Manley v. Trustees of Lagrange, 7 Ky. Law Rep., 825; Gibson v. O'Brien, 9 Ky. Law Rep., 639: Bayard v. O'Brien, 14 Ky. Law Rep., 648; Emory v. San Francisco, 28 Cal., 375.)

7. The contention that the warrants covering the improvements on a particular street are invalid because the contract provided that gravel should be put upon the road, and, therefore, differed from the ordinance, which provided that the road should be "macadamized," can not be sustained, since the word "macadamized" would include the method provided for in the contract. (Webster's Unabridged Dictionary, "Macadamize;" Burnam v. Chicago, 24 Ill., 496; Warren v. Hendley, 31 Iowa, 31; Railroad Company v. Mt. Pleasant, 12 Iowa, 112.)

8. The failure of the ordinance to fix the grade of the streets does not render it invalid, for the city charter makes it the duty of the city engineer to establish the grade of all public ways. (Acts 1889–90, vol. 1, p. 687, sec. 118.)

9. An ordinance authorizing street improvements need not describe them in detail, and the ordinance in question can not be attacked on that ground. (Tabor v. Graffmiller, 9 N. E (Ind ), 721; Becker v. City of Washington, 7 S. W., 291; Murray v. Tucker, 10 Bush, 240; Dillon's Municipal Corporations, sec. 739; Garvin v. Daussman, 5 Am. State Rep., 637.)

Fox v. Middlesborough Town Company.

CHAPMAN & NICOLL for appellees.

1. The ordinance under which the improvement was done was void, as it prescribed a method of apportionment different from that provided by the charter.
2. The provision of the charter that "after the adjournment of each meeting of the board of council every ordinance and resolution shall be published at least once in some newspaper; * * * but no ordinance for any original improvement mentioned in this charter shall take effect  *  *  *  until the ordinance as first passed shall have been published for at least one week in some newspaper," &c., requires a publication after each passage of the ordinance, and appellants having failed to allege that the ordinance under which the work was done was so published, the demurrer was properly sustained. (Dumeesnil v. City of Louisville, 2 Ky. Law Rep., 429; Dunn v. German Security Bank (unreported), see Louisville City Code, p. 548 (note); Harris v. Zable, 4 Ky. Law Rep., 1000; Craycraft v. Selvage, 10 Bush, 696.)
3. The contract was void because the ordinance provided for the "grading, macadmizing, curbing and guttering" of the streets, whereas the contract was for grading and macadamizing only. The contract was also in direct violation of the charter, which contemplates that the whole work should be let out and the whole completed before warrants can be issued. (City of Henderson v. Lambert, 14 Bush, 24; City of Louisville v. Cochran, 82 Ky., 15.
4. No question of estoppel could arise until facts were pleaded and proven to establish it.
5. Delegated authority must be strictly pursued, and a statute by which a lien is sought to be imposed upon private property must be strictly followed or no lien will be created, and, therefore, errors in the ordinance in providing a method of apportioning the costs of street improvements will prevent a recovery for the improvements. (Acts 1889–90, vol. 1, p. 648; Harris v. Zable, 5 Ky. Law Rep., 114; Merritt v. Village of Portchester, 71 N. Y., 311; Elliott on Roads and Streets, Chapter on Assessments; City of Louisville v. Louisville Gas Co., 15 Ky. Law Rep., 177.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellants, who were the plaintiffs below, constructed certain streets in the city of Middlesborough, by virtue of ordinances passed for their original construction, and having obtained their warrants upon the completion of the work, sought to enforce their

liens on the lots bordering on the improvements in satisfaction of their contracts with the city. The streets improved were Ashbury avenue, Nineteenth street, Englewood road and Salisbury avenue. There were four actions instituted against the lot-owners, and a demurrer filed to each upon the ground that the city in passing the ordinances and entering into the contracts, had failed to comply with the provisions of the charter, so as to create a lien upon the lots bordering on these streets.

By the provisions of the charter of the city, ample power is given the board of council "to cause any of the public ways to be graded, paved, macadamized, curbed or guttered in such manner as it may by ordinance prescribe." (Section 101, city charter.)

By section 106 of the charter it is provided "a lien shall exist for the cost of the original construction of public ways, * * * and payments may be enforced on the property bound therefor, by suit in equity, and no error in the proceedings of the board of council shall exempt from payment or defeat said lien after the work has been done as required by the ordinance, but the board of council, or the courts in which suits may be pending, shall make all corrections, rules and orders to do justice to all parties concerned."

This same section further provides: "But no ordinance for any original improvement, mentioned in this charter, shall take effect until it is passed by a yea and nay vote at two meetings of the board of council, at least two weeks apart, at least four councilmen voting in the affirmative, and until the ordinance, as first passed, shall have been published at

least one week in some newspaper in said city, unless said improvement be asked by a petition signed by persons owning a majority of the property liable therefor, when the ordinance may be passed, at one meeting of said board, by a majority yea and nay vote."

The several ordinances for the original construction of these streets were passed by the affirmative vote of four of the councilmen, at two meetings of the board two weeks apart, by a yea and nay vote, but no publication of the ordinance was made between the vote upon the ordinance the first time and the vote on it the last time, and it is, therefore, insisted the ordinance is invalid, and no lien exists on the lots fronting the streets for that reason.

It may be proper to consider, first, the point raised by counsel that the ordinances as enacted, even if there had been a publication, were not such as created any lien on the ground fronting the improvements. The 102d section of the charter provides that the cost of this original construction "shall be made at the exclusive cost of the owners of lots in each fourth of a square, to be equally apportioned by the council, except as to corner lots," &c.

The council, in framing the ordinance for the improvement of Ashbury avenue and Salisbury avenue, recited (after specifying the territory to be improved) that the cost should be apportioned on the lots fronting the improvement, as provided by the city charter. As to Nineteenth street, it was recited only that the property fronting the improvement should be liable for the cost, and as to Engelwood road, provided that the owners of lots in each fourth of a square should

pay for the improvements. It seems to us it would be extremely technical to hold that the council, in failing to designate the manner of apportionment, or when designating the mode, did nothing to mislead the owner of the realty fronting the improvement, as to the nature of the improvement, or the manner of his liability, has released any lien the contractor would otherwise have had for his work and labor, leaving him altogether remediless, as the charter forbids the assertion of any claim against the city, however erroneous the proceedings of the council may be. The council had ordered this improvement to be made, and provided the costs should be apportioned as provided by the charter as to two of the streets, following the provisions of the charter as to Englewood road, but, as to Nineteenth street, providing the property fronting the street should pay for that improvement.

There was no necessity for the ordinance designating what property was liable to be subjected to the cost of this work, for the charter, of which the citizens of the city were required to take notice, fixed the liability for the cost of this original construction, and each ordinance in effect said to the property owners: "These improvements have been ordered, and your liability is fixed by the laws empowering the council to have these improvements made." It was not essential that the council should say in the ordinance who was liable, and the mode of enforcing the liabilty, and when undertaking to do so, if they have not misled the parties who are to be charged with the expenditure, they can not for such a reason claim exemption from payment.

· This court has held in the City of Henderson v. Lambert, 14 Bush, 24, in substance, that where this power given to such bodies is purely statutory, it must be strictly followed in order to create such a lien as is asked to be enforced here, and, therefore, when publication is to be made or notice given, and the statute is not at least substantially complied with, no lien can be enforced, and the question of publication raised in these cases is entitled to more consideration than any other presented.

The lot owner, upon whom this burden is attempted to be placed, must have some notice of the intention to charge him, and when publication is required in a newspaper for a fixed period of time, the notice must be given in that mode, and the mere fact that he has witnessed the progress of the work from its beginning to its completion, can not work an estoppel, but the charter in this respect must be complied with.

There is a provision in section 7 of the charter, providing that every ordinance or resolution shall be published at least once in some newspaper published at Middlesborough immediately after the adjournment of each meeting, but in section 106, when directing the manner in which a lien for these improvements shall be created, the charter requires that before an ordinance for any original improvement *shall take effect* it shall be passed at two meetings of the board, the meetings to be two weeks apart, with the affirmative vote of four members, and that it shall not take effect *until the ordinance as first passed* shall have been published at least one week in some newspaper in said city. Instead, therefore, of a publication once

only in a newspaper, the ordinance must be published *as first passed* in some newspaper one week before the ordinance becomes effective. But it is contended by counsel for the lot owners that this weekly publication must be made after the first passage of the ordinance, and before its second passage, to enable the lot owners to appear and assign their reasons, if any, why such improvements should not be made. If the second passage of the ordinance made it effectual, there might be some reason for assuming that such a construction should be given this provision of the charter, for then the lot owner could have no opportunity to be heard.

If a publication of the ordinance on its second passage was only required, the lot owner would have no means of knowing whether the last vote taken was upon the ordinance as first passed or not, and to prevent amendments and insure an affirmative vote twice in favor of the ordinance as first passed, that ordinance (the first) is required to be published, and published after the last vote is taken.

If the second vote is upon an ordinance differing in substance from the first, then no lien is created, as the charter has not been pursued. Suppose the publication is made after the first vote is taken, and before the second passage of the ordinance, in what way is the lot owner to ascertain whether or not the votes at the two meetings are in favor of the same ordinance? But when you construe the charter as requiring the ordinance to be published one week after its second passage *as first passed*, you then have the same ordinance twice voted for by the council, and

the lot owner given the opportunity to make his defense, as the ordinance does not become effectual until this publication has been made one week. Publication is required that the property holder may know that an ordinance has been passed, and having one week to make known his objections before the ordinance can be enforced, he has his day in court, and the charter is complied with.

It is again urged that the work or street has not been completed, and no lien exists until this has been done. We infer from the petition that the contract between the appellant and the city has been fully complied with, and the streets graded and macadamized; but it is argued that there is no curbing or guttering, and until this has been done the contractor has no remedy. If the appellant, under the ordinance and contract, had agreed not only to grade and macadamize these highways, but with it the curbing and guttering, and he had failed to perform his undertaking, then no lien would arise; but in this case the appellant undertook to grade and macadamize the streets, and this has been done and his work accepted, and we see no reason why, under such an ordinance, the city may not have several contracts, and certainly the power to authorize the grading and macadamizing, that makes the street in one sense complete and fit for use as a street. It benefits the owners of the lots, for they have a broad and well constructed street, where, before, they were without any such improvement. The council may not have desired to impose the whole burden of the improvement at any one time upon the lot owner, or for other reasons deemed it inexpedient to have

the curbing and guttering done at the same time, but whether so or not, the appellant has complied with his contract, conceding the facts alleged to be true on the demurrer, and should have his pay.

We do not mean to say that the appellant could have enforced his lien upon a partial performance, but for a well graded and macadamized street under this contract (and the acceptance by the engineer shows this to be the case,) he should be allowed to enforce his lien, and the power to make such a contract is expressly authorized by section 101 of the city charter. (Emery v. San Francisco Gas Co., 28 Cal., 375.) By the provisions of the charter the engineer is to fix the grade of all the public ways, and the grades and width of the streets as fixed by both the engineer and council are set forth in the petition. The advertisements were proper for bids, and upon the face of the petition the appellants were entitled to recover, and if any valid defense exists it must be made to appear by answer.

The several petitions and amendments presenting causes of action, the demurrer should have been overruled, and the case disposed of on its merits. Reversed and remanded for proceedings consistent with this opinion.