## Mulligan, et al. v. McGregor, et al.

### Patterson, et al. v. Same.

(Decided June 3, 1015.)

## Appeals from Fayette Circuit Court.

1.  Municipal Corporations—Streets—Dedication and Acceptance of.—Although a street may have been dedicated to the public use and used by the general public for many years, this use does not constitute an acceptance by the city, as the city has the option of accepting or not accepting a street dedicated to public use.

2.  Municipal Corporations—Streets—Acceptance of.—The methods by which a municipality may accept land dedicated to public use are of great variety, and acceptance may be manifested by acts and conduct indicating control or regulation of the dedicated place.

3.  Municipal Corporations — Streets — Acceptance of — Statutory Method Not Exclusive.—Although Section 3094 of the Kentucky Statutes provides that when a street has been dedicated to the public use it may be accepted by an ordinance, this method is not exclusive and the city may accept the street by undertaking to control or improve it, or by directing the construction of a sewer in it.

4.  Municipal Corporations—Sewers—Mandatory Requirement of Statute in Respect to Construction of.—Section 3105 of the Kentucky Statutes provides that an ordinance for the construction of

a sewer shall not be passed until a resolution declaring the construction to be a necessity and "setting out in general terms the property subject to the payment of the same" shall have been passed. Under this statute it was a jurisdictional prerequisite to the letting of a contract for the construction of a sewer at the expense of abutting owners that the resolution should describe in a general way the property to be charged with the cost of construction, and a resolution providing for the construction of a sewer "on Lexington Avenue from a point near Maxwell Street to connect with the Southern main sewer," was not sufficient to charge property owners on "Adams Street and College Place," over which the sewer was built on its course from Lexington Avenue to the southern main sewer, with the cost of construction.

5. Municipal Corporations—Streets—Sewers—Errors in Proceedings of Council or Prosecution of Work—Effect of.—Section 3105 of the Kentucky Statutes, providing that "no error in the proceedings of the council shall affect the validity of the assessment for sewer improvement" applies to some error or irregularity that does. not go to the extent of being a substantial violation of a mandatory, statutory provision.

6. Municipal Corporations—Estoppel of Property Owner to Contest Validity of Improvement Tax.—The property owner is not estopped to contest the validity of a void tax.

7. Municipal Corporations—Street Improvements—Effect of Failure to Observe Jurisdictional Requirements.—Where an ordinance or resolution providing for the construction of an improvement is lacking in some feature necessary to confer jurisdiction, this insufficiency renders the entire proceedings that follow the enactment of the ordinance void, and the city cannot charge the property owner with the cost of the improvement.

FALCONER & FALCONER and JAMES H. MULLIGAN for Mulligan, et al.

GEORGE B. KINKEAD for Patterson, et al.

FORMAN & FORMAN for McGregor, et al.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

These two cases, which were heard together in the lower court, and will be so disposed of here, involve the validity of assessments for the construction of a sewer on Adams street and College place in the city of Lexington. On Winslow street there is a large or main sewer. Adams street lies parallel with and about 200 feet north of Winslow street, and is connected with Winslow street by the short street known as College place. Lexington avenue runs at right angles with Adams street and intersects it.

In May, 1910, the city council of Lexington adopted a joint resolution declaring in its title "the construction of a sanitary sewer on each side of the following streets and avenues to be a necessity: * * * on Lexington avenue from a point near Maxwell street to connect with the southern main sewer." In the body of the resolution it was also recited that "the construction of a sanitary sewer * * * on Lexington avenue from a point near Maxwell street to connect with the southern main sewer is hereby declared to be a necessity." It was further set forth that the cost of the construction should be assessed against and borne by the owners of the property abutting on both sides of the respective streets and avenues on which the said sewer was to be constructed, "said property being hereby declared to be the property benefited by said improvements and liable for the cost thereof."

In June following the city council adopted an ordinance "for the construction of public sanitary sewers on * * * Lexington avenue, Adams street, and College place, * * * at the cost of the abutting property owners." This ordinance set forth that the general council had theretofore passed a joint resolution declaring the sanitary sewers therein ordered to be constructed a public necessity, and also that the cost would be less than one dollar per foot of the abutting property. It was, therefore, ordained that, in accordance with plans and specifications, the sewer should be constructed "on Lexington avenue from a point 200 feet south of Maxwell street to Adams street; thence west along Adams street to College place; thence south on College place to the southern main sewer, with five manholes and one flush tank."

Pursuant to this ordinance the sewer described was constructed at a cost of less than one dollar per foot. After the sewer was constructed, it was approved and accepted by the city, and the cost, amounting to sixty cents per abutting foot, was assessed against the property, and upon the failure of the appellants who own the property abutting on Adams street and College place to pay the same, this suit was brought by the city and the contractor, asserting a lien on the property for the benefit of the contractor for the cost of the improvement.

After the pleadings had been made up and evidence taken, the cases were submitted to the lower court, and there was a judgment against the appellants, Mulligan and Patterson, for the amount assessed against their property.

On this appeal from the judgment rendered, several grounds are assigned for reversal. One is that neither Adams street nor College place is a street of the city, as neither had been dedicated to the city as a street or public way or accepted by the city as such.

The evidence shows that these streets or public places are in sparsely settled and outlying territory of the city of Lexington, and that they were opened for public use in connection with a sale of lots some twenty years or more ago. That from the time they were so opened they have been used by the public generally without let or hindrance as public ways or streets, although they have remained altogether unimproved; that the city never attempted to exercise any control over them by the construction of carriage-ways or sidewalks, or in any other manner, nor were they improved by the property owners. They simply remained in the unimproved condition they were when first opened to the public. It does appear, however, that some mention of these streets was made in an old map of the city, but this circumstance, in the way it comes into the record, is not very important. The evidence also showed that there had never been any formal dedication to the city or acceptance of these streets by the city, although they were dedicated to the use of the public at the time the lots were sold, and the streets opened primarily, as we may assume, to furnish access to the lots.

In 1910 the legislature passed an act entitled "An Act to amend and re-enact Sections 3094, 3096, 3097, 3098, 3099, 3100, 3101 and 3102 of the Kentucky Statutes, relating to the control and improvement of streets, public ways, landings, wharves, grounds and sidewalks in cities of the second class." This act now appears in the Kentucky Statutes as Sections 3094, 96, 97, 98, 99, 3100, 01, and 02. At the same session of the legislature there was passed an act relating to public improvements in cities of the second class, and amending Section 3105 of the Kentucky Statutes, and this act now appears as Section 3105. For convenience the sections of the Kentucky Statutes will be referred to in place of

the acts. And it may be here said that, although the
sufficiency of the title of these acts is drawn in question,
we do not think this contention well taken. The title of the
acts is broad enough to cover the subject matter con-
tained in the acts and sufficiently complies with Section
51 of the Constitution.

It is provided in Section 3094 that ''When any par-
cel of ground shall have heretofore been, or shall here-
after be, laid off as a street, avenue, or alley, and opened
to the unrestricted use of the general public for five con-
secutive years, it shall be conclusively presumed to have
been dedicated to the city as a public street, avenue, or
alley of the city, subject, however, to acceptance
by the city, and the city may, at any time after the
expiration of five years from the time such parcel of
ground is laid off and opened to the public, pass an or-
dinance declaring such parcel of ground to have been
so dedicated, and accepting the dedication thereof;
whereupon it shall become and be a public street, avenue,
or alley of the city for all purposes, and the lack of an
actual dedication thereof to the city, or of a record title
thereto on the part of the city, shall be no defense against
the collection of any tax which may be assessed and
levied against property abutting thereon for the pay-
ment of the cost of any improvement constructed thereon
by order of the city.''

Under this statute Adams street and College place
may be treated as having been dedicated as public ways
or streets. Indeed, in the absence of the statute, they
should be so treated, because they were in fact dedicated
many years before 1910 to the use of the public, and this
use on the part of the general public had been unre-
stricted since they were first set apart for public use.

Whether they have ever been accepted by the city in
such a manner as to make them public ways or streets
of the city is another question. The dedication of a
street or public place to public use and its use by the
general public does not make it a part of the public ways
of the city until it has been accepted by the city. Under
the common law as well as the statute, acceptance is
necessary to convert the dedicated territory into a
public way or street of the city. The mere act of dedi-
cation, or the use of the dedicated territory by the gen-
eral public, however long it may have continued, does
not put upon the city the duty of acceptance, nor can

the city be charged with the care of a public place merely. by the dedication of it to a public use. Whether the city will assume the burden that follows acceptance rests with it. Acceptance, however, in the absence of a statute defining what constitutes it or how it may be effected, may usually be manifested in other ways than by formal action taken by the city council through the passage of an ordinance or resolution of acceptance.

The rule generally prevailing as announced by the different courts is that unless the method of acceptance is prescribed by a statute to the exclusion of other methods, it may be shown by the acts or conduct of the city in respect to the property dedicated. For example, if the city undertakes the improvement of a dedicated street or way, or exercises in any manner such right of control or regulation over it as it exercises over other recognized streets or public ways, this improvement or regulation and control will be treated as an acceptance of it by the city, and the city will have the privileges as well as the burdens that follow the regulation and control of its streets and public ways. Or, as said in Dillon on Municipal Corporations, 5th Ed., Vol. 3, Sec. 1087:

"The methods in which the municipality may accept lands dedicated to public use, and become liable for the maintenance of streets, ways and other public places, are of great variety, and may be said to include every act done by the municipality through its proper officers in the exercise of its jurisdiction and control of public streets and highways. When property is dedicated to public use for a street, way or other purpose, the acceptance by the municipality need not be express and appear of record, but may be implied from any acts showing the recognition by the municipality of its existence as a public street or highway and the assumption of control over the same, as by repairs and improvements, knowingly made and ordered or knowingly paid for by the local authorities, which have the legal power to adopt the street or highway."

In this State this rule, although formerly doubted, if not denied, has come to be well settled. Thus, in Riley v. Buchanan, 116 Ky., 625, the court, after an extensive review of the authorities, said: "We feel constrained by reason and authority to hold that, while an acceptance by the public is essential to a complete dedication of a public highway or passway, the acceptance may be

either by formal ratification by the proper official board of the municipality; or by implication by it, where it takes charge of the road by directing improvements on behalf of the public or otherwise by overt act recognizing it as a public road."

In City of Louisville v. Snow's Administrator, 107 Ky., 536, it is said: "It is not necessary, ordinarily, at common law that the acceptance of a street should be evidenced by any formal act on the part of the municipal authorities. It may be implied, as where the municipality takes control of, includes it within the beat of its police officers, and permits the public to make use of it as a public street of the city."

Other cases illustrating that the exercise of regulation and control by the municipal authorities over a street or way that has been dedicated to a public use will amount to an acceptance by the city without any formal order of acceptance are: Southern Ry. in Ky. v. Caplinger's Admr., 151 Ky., 749; Faith v. City of Owensboro, 145 Ky., 276; City of Bloomfield v. Allen, 146 Ky., 34; Harrison v. City of Greenville, 146 Ky., 96.

It is said, however, that the principles announced in these authorities are not applicable here, because, under Section 3094 of the statute, *supra,* the acceptance of a street or public place by the city can be manifested only by an ordinance "declaring such parcel of ground to have been so dedicated, and accepting the dedication thereof." We do not, however, regard this statutory mode of acceptance as exclusive, or think that it was intended to preclude acceptance in any other way than by the enactment of an ordinance expressly showing acceptance. Of course, acceptance may be shown by an ordinance, as provided in this statute, but it may also be shown by other acts, resolutions or ordinances of the city if they are expressive of a manifestation of its purpose to accept the dedicated territory as one of the recognized streets of the city. McQuillin on Municipal Corporations, Sec. 1579. It could hardly be contended that, if a city council should undertake the improvement of a dedicated street in the form and manner that it improves other streets, this would not be an acceptance by the city of the street, although there might be a statute declaring that acceptance could be perfected only by ordinance or resolution.

Acceptance of a dedicated street or public way is optional with the city, but this option may be demonstrated in a variety of ways. As the city has the right to either accept or decline the privileges and burdens of acceptance, it is obviously just that it should make known its acceptance by some definite method, so that the public may know and the city authorities may know whether the city has assumed control of the street or place in question. It is not, however, so much the manner or mode of acceptance, as it is the certainty of it. It is not so important how the acceptance is shown, so that it is certainly shown.

In Steinacker v. Gast, 28 Ky. L. R., 573, the court said:

"When the common council of the city, upon the recommendation of the board of public works, has, by ordinance, directed the improvement of a thoroughfare as a street, that is a sufficient acceptance of the dedicated lands;" although Section 2832 of the Kentucky Statutes, a part of the charter of the city, provided that "No ground laid off and dedicated as a street or alley by the owner within any territory heretofore or hereafer annexed to the city shall be a public way of the city until the dedication by the owner as such shall have been accepted by the board of public works."

In Arnold v. Orange, 73 N. J. Eq., 280; Matter of Hunter, 164 N. Y., 365; City of Keokuk v. Cosgrove, 116 Ia., 189, the rule is also laid down that the method prescribed by the charter for the acceptance of dedicated streets does not exclude the common law method of acceptance; and this we think the correct rule unless the statute prescribing the method of acceptance excludes all other methods, which the statute here in question does not do.

It is, however, furthermore said that here the city did not manifest its acceptance by the adoption of an ordinance for the improvement of Adams street or College place, nor did it undertake to improve either of these public ways. It is true that the city has not improved these places, but when it adopted this ordinance describing them by name and directing the construction of a sewer in them, this was an acknowledgment by the city that they were public ways of the city, and was, as we think, sufficient to constitute their acceptance by the city as streets or public ways of the city. City of Philadelphia v. Thomas, 152 Pa. St., 494.

Another objection urged to the imposition of this improvement tax is that the city council did not observe the requirements of Section 3105 of the Kentucky Statutes. This section, after conferring on the council the power to construct sewers at the cost of the owners of the abutting land benefited thereby according to the benefits received, provides that "In every case the general council shall, by ordinance or resolution, fix and determine what lots and lands are benefited thereby, and fix and determine the amount of tax to be levied upon the several lots or lands so benefited: *Provided,* That where the cost of a sewer does not exceed the sum of one dollar per abutting foot of the property bounding or abutting upon the streets, alleys or highways, in, under or along which such sewer may be constructed, then such bounding or abutting property shall be deemed the property benefited thereby, and said cost shall be apportioned and assessed equally on such abutting lots or lands according to the feet abutting. No ordinance for the construction of a sewer at the cost of the abutting or benefited property owners shall be passed until a resolution declaring such construction a necessity and setting out in general terms the property subject to the payment of the cost of same, shall have passed by a two-thirds vote of the members-elect of each board of general council."

The argument is made that under this statute the adoption of an ordinance or resolution "setting out that the construction of the contemplated sewer is a necessity" and "setting out in general terms the property subject to the payment of the cost of the same" is a jurisdictional prerequisite to the letting of a contract by the city for the improvement and the assessment of a tax to defray the expenses of the same, and that as the ordinance or resolution here in question did not declare the construction of the sewer necessary on Adams street or College place, or set out in general terms, or at all, the property that would be subject to the payment of the cost of the sewer, the property owners cannot be burdened with the cost of construction.

If these recitations in the ordinance are jurisdictional; or, in other words, if the council has no authority to contract for the improvement, or charge the property owners with the cost of the same, unless these facts are stated in the ordinance or resolution making pro-

vision for the improvement, it would follow that the contract and assessment, so far as the property owners are concerned, is void. If, however, this direction in the statute is a directory and not a mandatory provision, it would not materially affect the validity of the acts done or proceedings taken under the ordinance.

This presents quite a difficult question and one about which there may well be difference of opinion. It will be observed that in May the council adopted a joint resolution declaring the construction of a sewer "on Lexington avenue from a point near Maxwell street to connect with the southern main sewer to be a necessity." But this resolution does not mention either Adams street or College place, nor does it describe or determine what lots or land will be benefited thereby, or give the name of any of the abutting property owners. After this resolution had been adopted the council enacted an ordinance ordering the construction of a sewer on "Lexington avenue from a point two hundred feet south of Maxwell street to Adams street; thence west along Adams street to College place; thence south on College place to the southern main sewer." This ordinance referred to the resolution showing the necessity for the construction of this sewer, and to this resolution we must look for the purpose of determining whether or not it was a substantial compliance with the statute.

The adoption of the resolution was the initial and important step in the construction of the sewer. After it was adopted the ordinance that followed was merely a detail in the progress of the work of construction. When a city council determines that the construction of a sewer is a public necessity, all that comes after must rest on the sufficiency of this resolution. Its importance is particularly emphasized by the requirement of the statute that a two-thirds vote of the members-elect of each board shall be necessary to its adoption, and so to the validity and sufficiency of this resolution we will now look.

In disposing of this question we may put aside as not material the ordinance subsequently adopted, not overlooking, however, the argument of counsel that the sewer cost less than one dollar per abutting foot. The provision in the statute that when the cost is less than one dollar per foot, the abutting property shall be deemed the property benefited thereby, merely removes the ne-

cessity for showing that the abutting property would receive benefit from the construction of the sewer. But whether the sewer costs less than one dollar per abutting foot or more than one dollar per abutting foot does not affect the question here involved or add anything to or take anything from the mandatory nature of the statutory requirement that the resolution declaring the construction of the sewer to be a necessity shall set out in general terms the property sought to be subjected to the cost of the same.

To the council has been left the determination of the question as to the necessity of the sewer, and when the council, by a two-thirds vote of the members-elect, has decided that it is a necessity, this decision is final. But the declaration that the improvement is necessary is not all that is required. There must also be a description of the property to be charged, and the importance of setting out in the resolution "in general terms the property subject to the payment of the cost of the sewer" is at once apparent. The purpose of this requirement was, of course, to give notice to property owners of the contemplated improvement and to advise the members of the council of the course of the sewer and the property that would be subject to assessment for its payment. Except for this statute the city council might pass a general ordinance for the construction of sewers that did not furnish any notice to property owners of the territory in which they would be constructed or any notice of the property that would be charged with the cost of construction.

It is, of course, manifest that property owners are deeply concerned in ordinances and resolutions that impose burdens on their property, and they have a right to know what the city council is doing or intends to do in respect to special assessments, so that they may be in a position to take such action as circumstances and conditions may dictate. City of Henderson v. Lambert, 14 Bush, 24; Worthington v. City of Covington, 82 Ky., 265; Thomas v. Woods, 128 Ky., 555; City of Covington v. Brinkman, 25 Ky. L. R., 1949; Richardson v. Mehler, 111 Ky., 408; Fox v. Middlesboro Town Co., 96 Ky., 262.

That this provision in the statute is a material as well as an important one can scarcely be questioned, and to carry out what we conceive to be the purpose of the

law, we think this feature of the statute should be treated as mandatory; or, in other words, as a jurisdictional declaration indispensable to the validity of any construction plan. Pennsylvania R. Co. v. Cole, 132 Fed., 668. The resolution does not mention either Adams street or College place. It furnished no information to owners of property abutting on these public places that a sewer at their expense might be constructed along these public places.

We do not mean to say that it is essential to the validity of a resolution like this that it should describe with accuracy the property subject to the payment of the cost of the sewer or the exact course the sewer would take. We think a resolution would be sufficient that described with reasonable certainty the property subject to the payment of its cost or that named the streets on which the sewer would be built; but this resolution does neither.

Some importance is attached by counsel to the fact that the resolution recites that the sewer would connect with the southern main sewer, but it fails to say where the southern main sewer is or to indicate the point at which it will connect with this sewer, so that the declaration that it would connect with the southern main sewer furnished no better information of the streets that it would follow or the property that would be subjected to its cost than if all reference to the southern main sewer had been omitted.

There is also a suggestion that as the sewer was to be constructed from a point on Lexington avenue to connect with the southern main sewer, there was but one possible course for it to take, "and that was to extend south on Lexington avenue to Adams street; thence along Adams street to College place, and thence down College place to Winslow street, where the southern main sewer is located."

We do not find, however, in this suggestion anything to cure the defect in this resolution. It seems to overlook the statutory requirement that the resolution itself must furnish such information as would give property owners reasonable notice of the property that might be subjected to the cost. The property owner has a right to look for information to the resolution and is not required to examine other papers or records or make independent inquiry to ascertain whether his property

will be affected. Street improvement and sewer construction at the expense of the owners of abutting property is not a common law right, but the creation of the statute, and when the statute plainly declares what steps shall be taken, the course of the statute must be substantially pursued.

We are also referred to that provision in Section 3105 of the Kentucky Statutes providing that "Nor shall any error in the proceedings of the general council exempt any property from the lien for, or payment of, such taxes after the work has been done and accepted as provided in this section; but the general council or the courts in which suits are pending, shall make all corrections, rules and orders to do justice to all parties concerned," as curing the error pointed out in this resolution. A provision similar to this is found in the charters of the various classes of cities. And it has frequently been held that after the work has been completed errors in the proceedings of the council or in connection with the construction of the improvement will not defeat the collection of the assessment. But this statute refers to some error, irregularity or informality in the action of the city council or in the prosecution of the work that does not go to the extent of being a substantial violation of a mandatory statutory provision. Illustrative cases on this subject are: Noland v. Mildenberger, 123 Ky., 660; Gleason v. Barnett, 106 Ky., 125; City of Louisville v. Gast, 118 Ky., 564; Cooper v. Nevin, 90 Ky., 85; Bullitt v. Gosnell, 133 Ky., 447; American Standard Asphalt Co. v. Schuster, 125 Ky., 497. But the objection to this assessment is not based on any informality or irregularity in the adoption of the resolution or the prosecution of the work incident to the improvement. It goes to the omission of a material statutory requirement.

The argument is further made on behalf of the city that the property owners knew this improvement was being made, and not having raised any objection during the progress of the work, they are now estopped to question the validity of the proceeding after the work has been completed and accepted. But the defect in this proceeding being a jurisdictional one, the doctrine of estoppel can have no application. The property owner need not take any notice of an improvement that is made without authority. He is not to be denied the right to

question the assessment of his property when it is sought to be subjected to the payment of a void tax. Fox v. Middlesborough Town Co., *supra;* McQuillin on. Municipal Corporations, Vol. 5, Sec. 2120; Dillon on Municipal Corporations, 5 Ed., Vol. 4, Sec. 1455.

Being of the opinion that the property of the appellants cannot be subjected to the payment of this tax, the judgment is reversed, with directions to dismiss the petition in each case.