## Graves County ex rel. v. City of Mayfield.

June 13, 1947.

Rehearing denied October 14, 1947.

Elvis J. Stahr, Judge.

L. R. Smith and Farland Robbins for appellant.

McDonald & Boaz and Aubrey Hester for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Affirming.

This appeal involves a controversy between Graves County (hereinafter referred to as "County") and the City of Mayfield (hereinafter referred to as "City") over the right of the City to install parking meters on property originally conveyed to the County for use as a public square. A declaratory judgment suit was filed by the County against the City. After extensive pleadings and a trial, the Chancellor adjudged that: (1) The property in controversy was a "public way" of the City and (2) the City had the right to establish parking meter zones thereon. The County appeals.

The facts are substantially as follows: In 1824 there was conveyed to the County a certain tract of land within the City to be used as a public square and for the erection of a court house and other county buildings. There is some dispute about the source of title, but it does not appear material. This tract of land was roughly 300 feet square. A court house was built thereon, surrounded by an iron fence erected on the boundary lines.

In 1889 the Graves County Court of Claims ordered a new iron fence built, and directed that the old fence line be moved back 24 feet. A new fence was erected at the new location, and the property lying outside of it was thereafter used by the travelling public as a sidewalk and street on all four sides.

In 1909 the iron fence was taken down, a 12 inch concrete curb was built on the fence line, and 10 foot paved sidewalks were completed outside of it. These were paid for by the county. About the same time the streets outside the sidewalks, which had theretofore been gravel, were rebuilt of brick. These streets were constructed by the City, and the County contributed a portion of the cost thereof. Later, in 1926, the streets were resurfaced with concrete, and the County again contributed a portion of the cost.

It is undisputed that the property lying outside of the curb which replaced the iron fence had been used at least since 1909 as a public passway for pedestrians, vehicular traffic, hitching of horses, and parking of vehicles. Since that date the City has cleaned, sprinkled, repaired and policed the sidewalks and streets. It has also issued permits for the holding of carnivals in that

area. In 1916 several light posts were erected on the sidewalks, and the lighting of the sidewalks and the streets adjacent thereto has been controlled, maintained and paid for by the City. In 1934 the City passed its first parking ordinance, and from that time to the present date has marked parking spaces around the court house square and on the property claimed by the County outside of the 10 foot sidewalks.

As above mentioned, all of the evidence establishes that these strips of ground outside the 12 inch curb, both as sidewalks and streets, have been used by the public for a great number of years for the purpose of travel thereon. We think this is a controlling fact in the case, and that a great amount of testimony taken and a number of exhibits filed have no bearing on the controversy.

The principal contentions of the County are that: (1) It could not abandon this property, (2) the City has not adversely possessed it, and (3) the County could not dedicate it to a public use and thereby give the City any rights in connection therewith. We will assume that the County is correct in the first two contentions above but this does not solve the problem. The question is not whether the County has lost title to this property, but whether or not such property constitutes a public way and whether or not the City has the right to exercise control thereover as such public way.

With respect to the County's third contention, we are willing to accept its argument that dedication is a matter of intention; that there must be an offer of the property for public use; and that there must be an acceptance of that property for that public use. We are unable to follow the County's arguments in this case any further.

Admittedly the property in controversy, as we have stated before but will state again for emphasis, has been used with the consent of the County by the public as a public way for a great number of years. There is not a line of evidence in this extensive record which even suggests that within the last 38 years the County has attempted to use this property for any purpose inconsistent with its use by the public for travelling purposes. People have been walking around the court house square on the 10 foot sidewalks for many, many years with the

consent and at the invitation of the County. There is no explanation for the building of the sidewalks outside the court house grounds except for their use by the general public.

The same is true with respect to the streets on all four sides. In 1909 brick was laid right up to the sidewalks, on the County property, and since that date the travelling public has used the area outside the sidewalks for customary street purposes. In the early days people used more primitive means of conveyance and hitched their horses on the County property adjacent to the sidewalks. In later years travel has been by motor vehicle and the area involved has been used principally for parking purposes, a necessary incident of travel.

It is impossible from this record to reach any other conclusion but that the County has clearly demonstrated its intention to offer the 10 foot sidewalks and the adjacent space for use as public ways. In Board of Park Com'rs of Ashland et al. v. Shanklin et al., 304 Ky. 43, 44, 199 S. W. 2d 721, 723, involving the question of whether or not city property had been dedicated for park purposes, we said:

"No record has been found of any formal action by its council dedicating it to park purposes, but from the beginning it has been designated, maintained and used as a public park in every sense of the word. There has been manifested a clear and unequivocal intention to devote this property to park purposes only. It must therefore be regarded as having been informally or impliedly dedicated with a result just as effectual."

The above finding squarely fits this case, and settles the matter of intention.

Assuming acceptance of this property for public travelling purposes is necessary, it is plainly evident that user by the public and acts of control by the City for a period of more than 38 years conclusively established such acceptance. Offers of dedication may be accepted by long continued use or by acts of governmental officials exercising control over the property, and formal action is not required. City of Hazard v. Eversole et al., 237 Ky. 242, 35 S. W. 2d 313; Louisville & Nashville R. Co. v. Whittle's Administrators et al., 216 Ky. 314, 287 S.

W. 894; Mulligan et al. v. McGregor et al., 165 Ky. 222, 176 S. W. 1129.

Counsel for the County relies heavily on the case of Graves County v. City of Mayfield, wherein the City admitted in its answer that the County had title to a certain portion of the property involved here. As heretofore suggested, we consider it immaterial as to who had the original title to this property or who has the ultimate title thereto. The Court below did not, and we certainly do not, intend to transfer title to the property in controversy from the County to the City. What we do decide is that such property has been dedicated to a public use and has become a public way.

The County makes the further contention that the property involved was originally dedicated to a public use for County purposes, and the County would have no right to rededicate it as a public way. We cannot agree, as the rededication, if any, is entirely consistent with the general public purposes for which the court house square was originally conveyed to the County. We do not have the provisions of the original deed before us, since the records thereof were destroyed by fire, but it seems clear that use as a public square would not be violated by devoting a portion of the property to a passway around such square. This is public property, and the benefit to the public is the paramount consideration. Obviously the present and past use of the property as a passway is highly beneficial to the public, and we conclude that this particular use is not contrary to the purposes of the original grant.

Having determined that the sidewalks and the portion of the streets which the County claims constitute public ways, our only remaining consideration is whether or not the City has the right to exercise control thereover in the furtherance of its public use. This question is settled by the provisions of Section 94.360, Kentucky Revised Statutes. The pertinent part of subsection (1) of that Section provides as follows:

"The city legislative body in cities of the second, third and fourth classes shall, by itself or through a department of public works or a superintendent of public works as provided by law, have and exercise exclusive

control over the public ways, landings, wharves and public grounds of the city.''

Mayfield is a city of the fourth class. ''Public ways'' are defined in Section 94.010, subsection (3), as ''public streets, sidewalks, alleys, avenues, roads, lanes, highways and thoroughfares.'' The property in controversy consists of public streets and sidewalks. They are public ways of the City of Mayfield. Such being the case, the statute gives the City the right to control them. It not only has the right but the duty to do so, even though they are not strictly City property. City of Pineville v. Lawson, 225 Ky. 542, 9 S. W. 2d 517; Town of Paintsville v. Commonwealth, 55 S. W. 915, 21 Ky. Law Rep. 1634.

It follows from what has been said above that if the installation of parking meters constitutes a proper control of the public ways of Mayfield, the City may lawfully place them on the streets and sidewalks around the court house square. In City of Louisville et al. v. Louisville Automobile Club, Inc., et al., 290 Ky. 241, 160 S. W. 2d 663, we upheld the validity of a city ordinance providing for the establishment and installation of parking meters.

The judgment of the Chancellor was in all respects correct, and that judgment is affirmed.