VILLAGE OF MAXWELL, LINCOLN COUNTY, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT, V. FRED M. BOOTH ET AL., APPELLEES.

73 N. W. 2d 177

Filed November 25, 1955. No. 33811.

*Baskins & Baskins,* for appellant.

*William S. Padley,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This action involved primarily the question of whether or not a street extending for one block and an alley in the village of Maxwell have been "laid out according to law" so as to prevent a vacation of a part of a dedicated street in a platted subdivision.

The plaintiff sought a decree determining that it had a legal title to the street and alley, was entitled to the possession of the same, and determining that a vacation deed was void and of no effect.

We hold that the plaintiff had accepted the dedication and that the vacation deed is ineffective. We reverse the judgment and remand the cause with directions to render a decree for plaintiff.

The village of Maxwell will hereinafter be referred to as the plaintiff. In stating the evidence, reference will be made to Fred M. Booth as defendant, as Mildred Booth, his wife, did not testify in the case.

On July 10, 1909, the then owners of the land here involved filed a plat of Mackin's First Addition to the village of Maxwell. The addition consisted of 4 blocks in a rectangular plat. The plat shows streets (not named) around each block with alleys through each block. It is recited that the streets and alleys "are dedicated to the Public use."

Block 4 is in the southwest corner of this addition. It consists of 10 lots, 5 facing north and 5 facing south, with an alley in between 20 feet in width. To the south is a street which is now U. S. Highway No. 30. To the west is shown a street 80 feet in width running north 2 blocks. It connects with a street between Blocks 1 and 2, and 3 and 4, running east and west. Lots 5 and 6 of Block 4 are adjacent to this street. A like street is north of Blocks 2 and 3. There are no connecting streets shown to the north or west of this addition.

The alley in Block 4, running east and west, is used in part from the east.

The west line of this street is the west corporate limits of plaintiff village, and the boundary line to the north of the addition is the north corporate limit. The street is not open for travel west of Blocks 3 and 4 and north of Block 3 in the sense that it has not been graded or maintained. It is in its natural state, although there is no indication that it could not be traveled by the public if it is so desired. The street east of Blocks 3 and 4 is a used street, as is the street between Blocks 3 and 4. The platted land was within the corporate limits when platted and continuously thereafter.

In summary, the part of the street involved here is unused and unimproved so far as public travel is concerned.

In August 1932, the plaintiff by ordinance granted a telephone company the right to construct and maintain its lines over the streets and highways of the village. It is shown that a line was constructed running north and south along the east side of the street in question and that two or more poles are located in the 1-block area here involved. Just when this construction occurred is not shown. It is shown that it was before the defendants took title to their property. It is there now. Defendant testified that he had entered into an agreement, apparently after this controversy arose, to permit the maintenance of this line if the street was vacated. It is an interstate toll line and is not a part of the telephone system of the plaintiff.

In 1951, the plaintiff had the west corporate limit of the village surveyed. Thereafter in 1951, a drainage ditch was constructed along the west line of the street in question for 2 blocks north and south and 1 block east and west where it connected with a drainage ditch running to the east. It is a ditch 5 feet wide and from 2 to 3 feet deep. This was designed to drain an area at

the south end of the street and a low place in the borrow pit of U. S. Highway No. 30.

It was stipulated that this drainage ditch was constructed at the instance of the defendant with the permission and approval of the board of trustees of plaintiff. It was an informal proceeding. Defendant wanted the drainage ditch built. The board members gave him permission and showed him where to put it. Prior to that time there was a north-to-south fence in the middle of the street. Defendant had it removed to the west line of the street. Defendant had the ditch dug. The stipulation is that the cost was paid by the defendant. The evidence is that the contractor sold the dirt and got pay in that way.

In June of 1953, the defendant began the construction of a garage in the street. The members of the village board protested at that time. Defendant asked the members of the board to vacate the street, close it, or sell it to him. His request was denied. He went ahead and completed the construction of the garage.

In July of 1953, the plaintiff had the area involved surveyed. Defendant built his house on Lot 6 of Block 4 in 1948. The survey shows that the west wall of his house and the eaves are in the street and that he has built a north-and-south fence in the street, beyond the telephone line and across the alley.

On July 3, 1953, the plaintiff filed its petition in this action in which it asserted ownership and right of possession of the street involved.

On December 1, 1953, the board of trustees of plaintiff met in regular session and passed a resolution as follows: "There was a discussion of platted street west of Booth's. Moved by Eubank, seconded by Carrothers, to open street. Motion carried." The record does not show who were present and voting. The evidence is that at least a majority of three were present.

On December 11, 1953, the defendants executed, acknowledged, and filed a vacation deed "vacating a strip

of land 80 feet in width located to the west of Lots 5 & 6 in Block 4."

On December 18, 1953, defendants filed an amended answer in which they alleged the execution of the vacation deed and relied on it as a defense to the action and asserted a right to the use and occupancy "of an undivided one-half of said right-of-way." Plaintiff replied on January 9, 1954.

The dedication here was a statutory one under the provisions of what are now sections 17-415, 17-416, 17-417, and 17-418, R. R. S. 1943. Section 17-420, R. R. S. 1943, provides: "Any part of a plat may be vacated under the provisions and subject to the conditions of section 17-419; *Provided,* such vacating does not abridge or destroy any of the rights and privileges of other proprietors in said plat. *Nothing contained in this section shall authorize the closing or obstructing of any public highways laid out according to law."* (Latter emphasis supplied.)

The precise question presented here is whether or not the vacation deed of the defendants of December 11, 1953, is unauthorized because of the language italicized above.

Was this street one laid out according to law?

Both parties here cite and rely on our decision in Village of Hay Springs v. Hay Springs Commercial Co., 131 Neb. 170, 267 N. W. 398, wherein we held: " 'The words "laid out according to law" have a well-known meaning, under our statutes, and they plainly *include* the doing of those things by the proper local officers which are essential in creating a public highway, to authorize it to be worked and traveled, and especially the surveying, marking the course and boundaries, and ordering it established as a highway. The affirmative action of the public authorities is indispensable in such case.' Chicago Anderson Pressed Brick Co. v. City of Chicago, 138 Ill. 628, 28 N. E. 756." (Emphasis supplied.)

The above, of course, is not an all-inclusive rule. It answered the problem there presented.

The general rule is that the plat is taken as a mere offer to dedicate which must be accepted before the dedication is complete. 16 Am. Jur., Dedication, § 31, p. 377. All the streets of a new plat are not ordinarily needed at once, and acceptance and use as soon as growth and improvements require is all that is expected.

The Supreme Court of Wisconsin in Galewski v. Noe, 266 Wis. 7, 62 N. W. 2d 703, held: "It is not necessary that a municipality accept and open a street for public use until the public necessity requires it."

The rule is also stated: "Unless controlled by statute, acceptance of a dedication within a reasonable time is sufficient, such reasonable time depending on the circumstances of the case. In general, acceptance prior to revocation and prior to acquisition of adverse rights is sufficient." 26 C. J. S., Dedication, § 35, p. 96. See, also, 16 Am. Jur., Dedication, § 41, p. 389.

A study of our decisions indicates that we have generally followed that rule, although we do not find that we have so stated it. See, Hart v. Village of Ainsworth, 89 Neb. 418, 131 N. W. 816; Johnson v. Buhman, 98 Neb. 236, 152 N. W. 403.

The rule is also stated: "Ordinances and resolutions authorizing the construction of public works on the property constitute a sufficient acceptance of the dedication, and this is also true of a petition by a municipality for such works. Likewise, in the absence of controlling statutes, construction and maintenance of public works constitute an acceptance by the municipality." 26 C. J. S., Dedication, § 40(2), p. 107. Also, in 16 Am. Jur., Dedication, § 33, p. 380, it is stated: "Generally speaking, however, official acceptance may consist in any positive conduct of the proper public officers evincing their consent on behalf of the public."

In Littler v. City of Lincoln, 106 Ill. 353, it was held: "It is not essential that there should be any prescribed

formal act of acceptance, but there must be user, or some other act indicating acceptance, by those authorized in such matters to represent the public, to complete the dedication."

This case is quoted with approval in Chicago Anderson Pressed Brick Co. v. City of Chicago, 138 Ill. 628, 28 N. E. 756. We cite it because the latter case is the one which we used as authority in Village of Hay Springs v. Hay Springs Commercial Co., *supra.*

In City of Knoxville v. Hunt, 156 Tenn. 7, 299 S. W. 789, it was held: "* * * no matter what the particular act of a municipality is, if it be an act which could only be rightfully done on a highway, it should be regarded as an acceptance of that highway." See, also, Mulligan v. McGregor, 165 Ky. 222, 176 S. W. 1129.

In Graves County ex rel. v. City of Mayfield, 305 Ky. 374, 204 S. W. 2d 369, the rule is stated: "Offers of dedication may be accepted by long continued use or by acts of governmental officials exercising control over the property, and formal action is not required." See, also, In re Hunter, 163 N. Y. 542, 57 N. E. 735, 79 Am. S. R. 616; Olsen v. Village of Grand Beach, 282 Mich. 364, 276 N. W. 481.

Did the plaintiff accept the dedication prior to the attempted vacation of the street by the defendants in December 1953?

There are at least four distinct and separate acts of acceptance by the plaintiff shown by this record.

In 1932, the plaintiff, by ordinance, granted the right to the telephone company to use its streets for a telephone line.

The use of streets for telephone or telegraph purposes is a use for a public purpose. See, City of Plattsmouth v. Nebraska Telephone Co., 80 Neb. 460, 114 N. W. 588, 127 Am. S. R. 779, 14 L. R. A. N. S. 654; Slabaugh v. Omaha Electric Light & Power Co., 87 Neb. 805, 128 N. W. 505, 30 L. R. A. N. S. 1084. This particular street was so used. Defendants recognized that

right of user by the separate agreement made with the telephone company. That agreement, obviously, cannot affect the action of the plaintiff or its rights in the street. The action of the plaintiff in this regard was a clear acceptance of the dedication of the street to a public use.

Again in 1951, possession of the street was asserted by the plaintiff when, with its permission, consent, and approval, a drainage ditch was built in the street. This again evidenced the acceptance of the dedication.

In Consumers' Co. v. City of Chicago, 268 Ill. 113, 108 N. E. 1017, it was held: "* * * evidence of the acceptance of streets by a city is found in the affirmative act of taking possession thereof for the purpose of placing therein water mains or sewers." We see no controlling distinction between water mains or sewers, and surface drains. See, also, 26 C. J. S., Dedication, § 40(2), p. 107.

Again in 1953, board members of the plaintiff protested the construction of the garage, had this particular part of the street surveyed, determined the encroachments thereon by the defendants, and brought this action in which it asserted it had acquired a legal estate in and the right of possession, and prayed for judgment accordingly.

Again in December 1953, the plaintiff by resolution determined to open the street.

We have held that: "The authority granted the trustees to locate and open streets is administrative in its character * * *." Chicago, R. I. & P. Ry. Co. v. Nebraska State Railway Commission, 88 Neb. 239, 129 N. W. 439.

In Weilage v. City of Crete, 110 Neb. 544, 194 N. W. 437, we held: "* * * it is entirely proper to act by resolution, if the action taken is merely declaratory of the will of the corporation in a given matter, and is in the nature of a ministerial act."

Section 17-508, R. R. S. 1943, provides: "Second-

class cities and villages shall have the power to provide for the grading and repair of any street, avenue or alley and the construction of bridges, culverts and sewers. No street, avenue or alley shall be graded unless the same shall be ordered to be done by the affirmative vote of two-thirds of the city council or board of trustees."

It is suggested here that this resolution is of no effect because the record does not show that it was passed by the affirmative vote of two-thirds of the board of trustees of plaintiff. We see no merit in this contention. Normally the grading of streets requires the expenditure of public funds. Obviously, the requirement of a two-thirds affirmative vote is limited to orders for the grading of streets. Such an order is not involved here.

The defendants contend that this street was not accepted nor laid out according to law because it was never graded or otherwise improved for pedestrian or vehicular travel. Implicit in the section is a legislative recognition that municipalities may have streets, avenues, and alleys that have not been "graded." It is a matter of general knowledge which the Legislature has recognized. In Hart v. Village of Ainsworth, *supra,* we pointed out: "It does appear that none of the streets designated upon the plat had ever been accepted by the village, *or* used as a street." (Emphasis supplied.)

It follows that there have been clear and unequivocal acts of acceptance of the dedication by the village over a period of years prior to the vacation deed of the defendants and that the street involved is one which has been laid out according to law within the meaning of section 17-420, R. R. S. 1943.

The vacation attempted by the defendants is one clearly not authorized by the statute upon which defendants rely.

In Chrisman v. Omaha & C. B. Ry. & Bridge Co., 125 Iowa 133, 100 N. W. 63, the court in considering a com-

parable statute said "that the streets that proprietors may vacate are those only in which no adverse interest has been acquired. If accepted by the municipality, and improved so that the conveyance has been effective in passing the fee thereto, it is beyond the reach of the proprietors of a part of the plat." We quote from this case because it is one relied on in Village of Hay Springs v. Hay Springs Commercial Co., *supra.* The building of the telephone line and the drain are improvements under this language.

In Kelroy v. City of Clear Lake, 232 Iowa 161, 5 N. W. 2d 12, the court said: "A dedication of streets has been likened to a tender, which may not be withdrawn after acceptance on behalf of the public or the accrual of private rights with respect thereto."

In Theisen v. City of Detroit, 254 Mich. 338, 237 N. W. 46, the court held: "Private individuals could not, as against the public, after the dedication of the property as a street and acceptance by the township, take back the land so dedicated or any rights in it. They were powerless to change the dedication." See 26 C. J. S., Dedication, § 58, p. 144. See, also, 16 Am. Jur., Dedication, § 64, p. 410.

We have followed this rule in cases of implied dedication. See, Burk v. Diers, 102 Neb. 721, 169 N. W. 263; City of McCook v. Red Willow County, 133 Neb. 380, 275 N. W. 396. We see no reason why it should not be applied to the dedication here.

The judgment of the trial court is reversed and the cause remanded with directions to render a decree for the plaintiff in accord with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.