Sheila T. KIRCHEIMER and Thomas Kircheimer, et al., Appellants

v.

Regina S. CARRIER and Carl Wayne Carrier, Appellees.

No. 2012–SC–000716–DG.

Supreme Court of Kentucky.

Oct. 23, 2014.

Donald Wesley Cottrell, Kenneth Clay Ratley, Leitchfield, KY, for appellants.

John E. Spainhour, Jr., Rachel Tomara Caudel, Shepherdsville, KY, for appellees.

Opinion of the Court by Justice ABRAMSON.

Subdivision developers Regina and Carl Wayne Carrier appealed from an order of

the Breckinridge Circuit Court declaring a subdivision roadway a private road and enjoining the Carriers from allowing homeowners on nearby property to install driveways and culverts which would open onto that road. The Court of Appeals reversed the trial court, concluding that the disputed road, Sandy Beach Lane, was a public roadway that was dedicated by estoppel involving plat. Having concluded the Court of Appeals erred in applying that doctrine to the facts presented, we reverse the Court of Appeals and reinstate the order of the Breckinridge Circuit Court.

### RELEVANT FACTS

This appeal concerns a dispute over a roadway situated within Sandy Beach Subdivision in rural Breckinridge County. Developers Friedell Hinton, Barbara Hinton, and Charles L. Martin purchased the land that would become Sandy Beach Subdivision from James F. O'Donoghue in 1989. Subsequently, a one-third interest in the land was assigned to Donald Martin. Thereafter, Friedell Hinton constructed Sandy Beach Lane on the undeveloped land. The developers recorded the plat for Sandy Beach Subdivision with the Breckinridge County Clerk's Office on August 8, 1990. The subdivision plat contained a note which stated: "Developer retains a 1.0 ft. strip of land between existing road and the James F. (Buddy) & Danny O'Donoghue property." The remaining O'Donoghue property consisted of a large parcel of land adjacent to Sandy Beach Subdivision.[1] A Deed of Declaration of Restrictions ("deed of restrictions") for Sandy Beach Subdivision, recorded shortly thereafter on September 10, 1990,

restated the above-quoted sentence regarding the developer's retention of the one-foot strip and contained the following maintenance provision:

> In the event that a government body assumes responsibility for the maintenance of said road and utilities, the assessment shall be terminated, and all property owners shall grant such government body a forty (40) foot road easement, however, said easement shall not infringe upon the 1.0 foot strip of land between the roadway and the property of James F. O'Donoghue, which strip is reserved for Developer.

Deed of Declaration of Restrictions, ¶ 17.

Within one year, eleven lots in Sandy Beach Subdivision were sold. On October 6, 1991, the original developers assigned their interest to Sandy Beach Inc. Approximately eleven years later, in March 2002, Sandy Beach Inc. conveyed its interest in the remaining lots to Carl Wayne Carrier and Regina S. Carrier. The Carriers filed an amended deed of restrictions which contained a provision similar to paragraph 17, with the exception of the new language "without written permission from the developer or his assignee" replacing the above-quoted final clause "which strip is reserved by Developer." In addition to the remaining lots in Sandy Beach Subdivision, the Carriers acquired a large parcel of adjacent land and began to develop two new subdivisions named "Taylor's Landing" and "Sandy Beach II."[2] The one-foot strip of land referenced in the Sandy Beach Subdivision plat and its deed of restrictions physically separates Taylor's Landing and Sandy Beach II from Sandy Beach Lane. The Carriers then granted

---

1. O'Donoghue reserved a 75–foot access to Rough River reservoir, which abuts Sandy Beach Subdivision.

2. Despite sharing the "Sandy Beach" name, Sandy Beach II is completely separate from Sandy Beach Subdivision, as is Taylor's Landing.

certain lot owners in the new subdivisions, Taylor's Landing and Sandy Beach II, the authority to build driveways over the one-foot strip of land in order to access Sandy Beach Lane.

On October 8, 2007, several lot owners [3] in Sandy Beach Subdivision (the "Sandy Beach homeowners") filed a petition for declaration of rights with the Breckinridge Circuit Court demanding a declaration that Sandy Beach Lane was a private roadway, and further seeking to enjoin the Carriers or any other lot owners in Taylor's Landing or Sandy Beach II from installing driveways or culverts on to Sandy Beach Lane. After taking evidence and hearing testimony from developers, lot owners, surveyors, and other witnesses, the trial court concluded that Sandy Beach Lane was a private road for the sole use and benefit of the lot owners in Sandy Beach Subdivision. The trial court also held that the one-foot strip of land was restricted in use and could not be used or traversed by the Taylor's Landing and Sandy Beach II lot owners to access Sandy Beach Lane.

The Carriers appealed the trial court's decision to the Court of Appeals, which reversed. The Court of Appeals held that the Sandy Beach Subdivision developers objectively intended for the road to be public as evidenced by the recording of the plat and the selling of lots, thereby dedicating the roadway by estoppel. The Court of Appeals further held that any restrictions on use of the one-foot strip of land were unenforceable against the Carriers.

The Sandy Beach homeowners appealed the Court of Appeals decision to this Court, where they assert that the easement granted for the use of Sandy Beach Lane cannot be enlarged by the Carriers or any other property owners in the adjacent subdivisions. They further contend that the intent of the original developers to keep Sandy Beach Lane private controls over dedication by estoppel involving plat. In response, the Carriers argue that dedication by estoppel controls over the intent of the developers and therefore the Court of Appeals correctly declared Sandy Beach Lane to be a public roadway. We now reverse the Court of Appeals and reinstate the order of the Breckinridge Circuit Court.

## ANALYSIS

**I. Sandy Beach Lane is a Private Roadway for the Use and Benefit of Lot Owners in Sandy Beach Subdivision.**

The question of whether adjoining property owners in neighboring subdivisions should be enjoined from accessing Sandy Beach Lane turns in part on whether that road is public or private. The trial court held that the roadway was private, while the Court of Appeals concluded that it was public. The Court of Appeals based its decision on the principle of dedication by estoppel involving plat. While we acknowledge that a street may be dedicated for public use by dedication by estoppel involving plat,[4] we conclude that Sandy Beach Lane was not dedicated by estoppel.

---

**3.** Sheila T. Kircheimer, Thomas Kircheimer, Rachel S. Cupp, Jimmy R. Cupp, Jack Smith, Rebecca R. Smith, Michelle Amstutz, Ann E. Clark, Cecil M. Taylor, Carla S. Love, Danny S. Neely, Evelyn S. Neely, Michael J. Michalak, Penny M. Michalak, T. Alan Claypool, Ralph Pendygraft, Connie Pendygraft, R. Michael Tempe, Sheila J. Tempe, Allen W. Am-

stutz, and Beverly J. Amstutz filed the declaration of rights action.

**4.** The Sandy Beach homeowners suggest that this Court's decision in *Nash v. Campbell Cnty. Fiscal Court,* 345 S.W.3d 811 (Ky.2011) holds that dedication by estoppel involving plat is no longer a legally viable means of

■ Kentucky courts have long recognized the principle of common-law dedication as a means of appropriating private land for public use. *Consol. Realty Co. v. Richmond Hotel & Bldg. Co.,* 253 Ky. 463, 69 S.W.2d 985 (1934); *Grinestaff v. Grinestaff,* 318 S.W.2d 881 (Ky.1958). Generally, only the owner of the private land, or someone so authorized, may dedicate land for a public purpose. *Givens v. Commonwealth,* 244 S.W.2d 740 (Ky.1951). While dedication may be effectuated in a number of ways, the grantor's intent to dedicate is "essential to the validity" of the dedication. *City of Owensboro v. Muster,* 111 Ky. 856, 64 S.W. 840, 841 (Ky.1901). To that end, the dedication of land for use as a public street "rests *primarily and basically* upon the intention of the owner-dedicator[.]" *Banks v. Wilhoite,* 508 S.W.2d 580, 582 (Ky.1974) (emphasis added).

■ Because dedication is "a matter of intention," there generally must be "an offer of property for public use and an acceptance thereof for that public use in order to create public use by dedication." *Graves Cnty. ex rel. Robbins v. City of Mayfield,* 305 Ky. 374, 204 S.W.2d 369–70 (1947).[5] To ascertain a grantor's intent, one must look to the acts of the grantor that "clearly and unequivocally [manifest]" an intent to dedicate "or such as to estop him from denying that such was his intent." *Hofgesang v. Woodbine Ave. Realty Co.,* 414 S.W.2d 580, 585 (Ky.1967). One method of common-law dedication is dedication by estoppel involving plat, wherein the act of subdividing lots on a plat generally constitutes an offer to dedicate the roads appearing on the plat as public, and the sale of a lot as depicted on the plat completes the dedication. *City of Middlesboro v. Kentucky Utilities Co.,* 237 Ky. 523, 35 S.W.2d 877, 880 (1931). The Court of Appeals relied upon this principle when it concluded that the original developers of Sandy Beach Subdivision, having failed to expressly designate Sandy Beach Lane as a private road on the plat, dedicated the road as public by estoppel involving plat.

In applying the dedication by estoppel involving plat doctrine, the Court of Appeals primarily referred to legal treatises and three older Kentucky cases: *City of Middlesboro,* 35 S.W.2d at 877, *Morrow v. Richardson,* 278 Ky. 233, 128 S.W.2d 560 (1939), and *Cassell v. Reeves,* 265 S.W.2d 801 (Ky.1954). *Morrow* simply reiterates the general rule regarding the recording of subdivision plats with streets as indicative of a public dedication, however, *Cassell,* as quoted by the Court of Appeals states:

It is a settled principle that when a map or plat of a subdivided tract of land is exhibited or recorded and conveyances are made of the lots by reference thereto, the plat becomes a part of the deeds, and the plan shown thereon is regarded as a unity. And, *nothing else appearing,* it is held that all the streets, alleys, parks or other open spaces delineated on such map or plat have been dedicated to the use of the purchasers of the lots and those claiming under them as well as of the public.

dedicating private land for public use. However, our *Nash* decision explicitly states that: "Dedication, or open to the public, may be accomplished *in a number of ways.*" 345 S.W.3d at 819 (emphasis added). *Nash* also recognizes that "[m]ost of the public streets and alleys in [existing] cities have been created by dedication in the platting and development of various city subdivisions." *Id.* (internal quotations and citations omitted). There is nothing in our *Nash* decision that declares dedication by estoppel involving plat a defunct means of dedication.

5. "Offers of dedication may be accepted by long continued use [by the public] or by acts of governmental officials exercising control over the property, and formal action is not required." *Graves Cnty.,* 204 S.W.2d at 371.

*Id.* at 802 (emphasis supplied). As explained below, the "nothing else appearing" language is particularly significant. Moreover, *Cassell* continues by noting that streets, alleys, parks and open spaces on a plat are presumed to "add value to all the lots embraced in the general plan and that the purchasers invest their money upon the faith of this assurance that such open spaces, particularly access ways, are not to be the private property of the seller." *Id.* Thus the dedication by estoppel involving plat doctrine, stems primarily from concerns for the lot owners' rights *vis-à-vis* the seller, not from any overriding interest in the rights of the general public. Thus, earlier in *City of Middlesboro*, 35 S.W.2d at 880, this Court's predecessor stated, "If property on the line of a way designated as a street [on the plat] is acquired on the faith of the owner's act, he will not be permitted, as against the persons so acquiring the property, to defeat by his own act their right to have it regarded as a street with all the usual and appropriate incidents of such a public highway." (internal citation omitted).

The *City of Middlesboro* Court cited numerous treatises regarding dedication by plat but a careful reading underscores that court's recognition that the recording of a subdivision plat depicting streets is not the end of the inquiry. The court favorably quoted and applied the following statement of the estoppel by plat principle:

Where the owner of real property makes a plat of it and divides the land into lots and blocks intersected by streets and alleys, and sells any of the lots with reference to such plan, or where he sells with reference to the map of a town or city, in which his land is so laid off, he thereby dedicates the streets and alleys to the use of the public, *unless it appears either by express statement in the conveyance or otherwise that the mention of the street was solely for purposes of description and not as a dedication thereof.*

*Id.* at 881 (emphasis supplied). In short, the dedication by estoppel involving plat doctrine applies "in the absence of expressly qualifying facts," none of which were present in that case. *Id.* This reference in *City of Middlesboro* to "expressly qualifying facts" and the above-noted quote from *Cassell* regarding "nothing else appearing" leave no doubt that evidence of a contrary intent, *i.e.*, an owner/developer's intent that a roadway not be public, is relevant.

■■■ In that vein, the Court of Appeals asserted that the objective intent of the grantor, *i.e.* his intentions as manifested by public acts and declarations, controls over his subjective intent. While this approach has been approved and reaffirmed by this Court[6] and those in our sister states,[7] the Court of Appeals' determina-

---

**6.** "And, of course, the term 'intention' as it is used in the context of this rule is not to be taken in the sense of an actual intent, inasmuch as the basis of a common-law dedication often rests on mere conduct of the owner of land relied on by others to their injury so as to constitute an estoppel against the owner, and effectuate a dedication notwithstanding that there was never in the mind of the owner any actual intent to dedicate, the theory being that the owner must be held to intend the reasonable and necessary consequences of his acts. In other words, the acts of the owner must either be such as to show an intent to dedicate, or such as to estop him from denying that such was his intent[.] In brief, the intent may be actual or presumed, as in other branches of the law where intent is material." *Hofgesang*, 414 S.W.2d at 585 (internal quotations omitted).

**7.** "The intention to make an offer of dedication is not to be lightly presumed. It is not a subjective intention, concealed within the mind of the landowner. Rather, it must be manifested by acts and declarations which must be public." 23 Am.Jur.2d Dedication

tion that a developer's intent to keep a subdivision road private must be *expressly* denoted on the plat runs counter to the very principle upon which its decision rests, *i.e.*, it requires something more than assessment of objective intent, it requires an express statement that a road is to remain private. In fact, here the "objective intent" of the original developers (the "[something] else appearing" using the *Cassell* terminology, 265 S.W.2d at 802) was that Sandy Beach Lane was reserved for the sole benefit of the lot owners, and their acts and declarations reflect that intention.

The grantor's reservation of the "one-foot strip" of land separating Sandy Beach Lane from the O'Donoghue property is consistent with an intent to restrict landowners from adjacent neighborhoods from accessing the road. In its findings of fact, the trial court recounted original developer Friedell Hinton's testimony that the purpose of the reservation of the one-foot strip was to keep other landowners from "hooking on to" Sandy Beach Lane. Sandy Beach homeowners further testified that they had been assured by the original developers that the strip of land was intended to serve as a "barrier" to prevent landowners on nearby property from accessing the road. Finally, Larry Johnson, a land surveyor called to testify by the Carriers, offered two possible explanations as to why a developer would retain a one-foot strip of land along a road: 1) to provide a walking "pass;" and/or 2) to restrict access from an adjoining piece of property. The testimony that the one-foot strip of land along Sandy Beach Lane was

intended to restrict public access to the road was unrefuted.

More compelling, the language in the deed of restrictions concerning road maintenance places the burden of maintaining the road on Sandy Beach Subdivision lot owners, and only them. Provision 19 of both the original and amended deed of restrictions subjects Sandy Beach Subdivision lot owners to "an improvement and maintenance assessment" of $40.00 per year. The deed goes on to stipulate that the $40.00 maintenance fee would be terminated in the event that a government entity "assumes responsibility for the maintenance of said road and utilities," in which case the lot owners would grant a forty-foot road easement to the government entity which "shall not infringe upon" the one-foot strip of land. This provision is significant for two reasons. First, Sandy Beach Subdivision lot owners are solely responsible for the repair and upkeep of Sandy Beach Lane. Second, these lot owners alone are vested with the authority to grant an easement to a government body. As noted by the Sandy Beach homeowners in their brief to the Court, the developers' imposition and collection of a road maintenance fee, along with the act of vesting lot owners with the exclusive authority to grant an easement to the government, are actions entirely inconsistent with an intention to dedicate Sandy Beach Lane as public from the outset.

The foregoing reflects the developers' objective intent that Sandy Beach Lane was a private roadway and the reasonable perceptions of the lot owners confirm that intent. Sandy Beach Lane is the *sole* ingress and egress for Sandy Beach Subdivi-

§ 24 (2014) (citing *Whittom v. Alexander–Richardson P'ship*, 851 S.W.2d 504 (Mo. 1993); *Drescher v. Johannessen*, 45 A.3d 1218 (R.I.2012); *Tibert v. City of Minto*, 679 N.W.2d 440 (N.D.2004); *Donnelly v. Cowsill*,

716 A.2d 742 (R.I.1998); *Bush & Burchett, Inc. v. Reich*, 117 F.3d 932, (6th Cir.1997); *Gregg Neck Yacht Club, Inc. v. Cnty. Comm'rs of Kent Cnty.*, 137 Md.App. 732, 769 A.2d 982 (2001)).

sion.[8] As noted by the trial court, over the years Sandy Beach Subdivision lot owners made attempts to stop the general public from using Sandy Beach Lane. Notably, Carl Wayne Carrier, in his capacity as a Sandy Beach Subdivision lot owner from 1998–2000 and before becoming the successor developer, sought to place a gate across the entrance to Sandy Beach Lane in order to restrict public access. In his testimony before the trial court, Carrier conceded that as a lot owner,[9] he would not have agreed to allow owners from adjacent properties to build across the one-foot strip and access Sandy Beach Lane. Mike Tempe, a Sandy Beach Subdivision homeowner for almost-eighteen years, explained that the limitation of access to Sandy Beach Lane was a major incentive to purchase his lot in the subdivision.

 The fulcrum of the Court of Appeals' reasoning for finding a dedication by estoppel involving plat was the absence of an express designation of "private" as to the road on the subdivision plat.[10] However, there is no need to resort to inference or assumption concerning the absence of such a designation where legally enforceable documents acknowledge that Sandy Beach Lane is a private road. *Sawyers v. Beller*, 384 S.W.3d 107, 111 (Ky.2012) ("If

the language is unambiguous, the intent of the parties at the time the easement agreement was executed must be determined from the context of the agreement itself.").[11] The intention to restrict public access to Sandy Beach Lane was manifested by the developers' retention of the one-foot strip and by the language in the deed of restrictions. The one-foot strip acts as a physical barrier against unwanted access to the road, and the maintenance agreement in the deed of restrictions reflects a bargained for exchange wherein the Sandy Beach Subdivision lot owners assumed responsibility for maintaining the road. In sum, we agree with the trial court's conclusion that Sandy Beach Lane is a private roadway for the sole use and benefit of the Sandy Beach homeowners and other lot owners in that subdivision.

## II. The Easement for Use of Sandy Beach Lane May Not Be Extended or Enlarged.

In its judgment, the trial court held that the one-foot strip of land abutting Sandy Beach Lane was restrictive in use and that the Carriers could not grant adjoining landowners in Taylor's Landing and Sandy Beach II permission to cross the strip by

8. Sandy Beach Lane ends in two cul-de-sacs often used by the lot owners to access Rough River reservoir. As found by the trial court, the lots in Taylor's Landing have Buddy Drive for ingress and egress while the lots in Sandy Beach II have Buddy Drive and Kathleen Court for ingress and egress. Those roads are reflected in the plats filed by the Carriers.

9. The Carriers owned a home in Sandy Beach Subdivision from 1998–2000 that was destroyed by fire.

10. Denoting a roadway on the plat as "private" is, undoubtedly, the easiest way to insure that estoppel involving plat is not erroneously applied, but, as explained above, the doctrine itself does not require that.

11. "The tendency of modern decisions is to disregard technicalities and to treat all uncertainties in a conveyance as ambiguities subject to be cleared up by resort to the intention of the parties as gathered from the instrument itself, the circumstances attending and leading up to its execution, and the subject matter and the situation of the parties as of that time. Hence, in the construction of deeds surrounding circumstances are accorded due weight. In the consideration of these various factors, the court will place itself as nearly as possible in the position of the parties when the instrument was executed." *Delph v. Daly*, 444 S.W.2d 738, 740 (Ky.1969) (quoting *Monroe v. Rucker*, 310 Ky. 229, 220 S.W.2d 391, 393 (1949)).

constructing driveways or culverts thereon. The Court of Appeals disagreed, concluding that any restriction on use of the strip was unenforceable against the Carriers because there were no expressions of restrictions of use recorded within the property's chain of title.

■ There is no dispute that the Carriers, as successor developers of Sandy Beach Subdivision, retain ownership interest of the one-foot strip of land. To be sure, the existence of the one-foot strip is critical to the resolution of this dispute to the extent that it reflects the intent of the original developers to keep Sandy Beach Lane private. However, a second pertinent question is whether the Carriers or their assignees may enlarge or extend the easement known as Sandy Beach Lane (created by the original developers for ingress and egress of Sandy Beach Subdivision lot owners)· by installing driveways and culverts that cross their one-foot strip and open onto that road. We readily agree that the answer is "no."

■ It is well established that "an easement for the benefit of a particular piece of land cannot be enlarged and extended to other parcels of land, whether adjoining or distinct tracts to which the right is not attached." *Cleve v. Nairin*, 204 Ky. 342, 264 S.W. 741, 742 (1924). The purpose of this rule against the enlargement of an easement is to "prevent an increase of the burden upon the servient estate." *Id.* Just as an easement holder may not expand the use of the easement, a grantor is likewise prohibited from interfering with the dominant estate's use of the easement. *Sawyers*, 384 S.W.3d at 111.

The Sandy Beach homeowners assert that their easement cannot be enlarged by the Carriers authorizing property owners in adjacent subdivisions to use it. They cite *McBrayer v. Davis*, 307 S.W.2d 14

(Ky.1957) as the foundation of their position. The *McBrayer* case involved a portion of a large tract of land that was subdivided and sold by a. Mrs. Salisbury, the original owner. 307 S.W.2d at 15. The *McBrayer* lot owners were granted an express easement to use the sole road located on the property for ingress and egress. *Id.* Following the death of Mrs. Salisbury, the undivided remainder of the tract was placed in trust. *Id.* The trustees of the Salisbury tract sought to sell a 30 × 95 foot portion of the retained property extending west from the west end of the road to the western boundary of the tract. *Id.* This arrangement would allow the purchaser to use the road to reach other adjoining land owned by him. *Id.* The *McBrayer* lot owners brought an action to enjoin the trustees from conveying the land and to enjoin the purchaser from using the road. *Id.* This Court concluded that allowing the trustees to grant the purchaser access to the road would constitute an interference with the rights of the lot owners, who were the "holders of the original easements" and therefore entitled to the belief that their use of the road would continue unencumbered. *Id.* at 16. Ultimately the *McBrayer* Court held that an easement cannot be enlarged or extended without the consent of the parties affected. *Id.*

There are cases under the *McBrayer* rule wherein an easement may be enlarged, but only when the parties have contemplated the additional use. For example, in *Delph*, 444 S.W.2d at 738, this Court held that several lot owners were entitled to connect a new road to an existing road in a subdivision because the deed language gave notice to easement holders that the roadway might be extended. Because the enlargement of the easement was clearly contemplated by the affected parties, the *Delph* Court determined that the additional use did not constitute an unreasonable burden on the easement. *Id.*

at 742; *see also Smith v. Combs*, 554 S.W.2d 412 (Ky.1977).

The Carriers contend that principles set forth in *McBrayer* and *Delph* prohibiting the enlargement of easements apply only to private roadways and not to Sandy Beach Lane. Of course, this position is premised on the Carriers' belief that the road is public. However, as explained herein, Sandy Beach Lane is a private road for the use and benefit of Sandy Beach Subdivision lot owners. Therefore, the *McBrayer* rule against the burdensome enlargement of easements without the agreement of the parties applies.

We agree with the trial court's conclusion that the additional use of Sandy Beach Lane by adjoining landowners in the two new subdivisions developed by the Carriers would constitute an unreasonable burden on the Sandy Beach Subdivision lot owners' easement, where such use was not contemplated by the parties. Those lot owners, having purchased lots according to a plat which identified Sandy Beach Lane as their sole means of ingress and egress, have an express easement for the use of Sandy Beach Lane. *Sawyers*, 384 S.W.3d at 111 (citing *Loid v. Kell*, 844 S.W.2d 428, 429–30 (Ky.App.1992)). Unlike the deed language in *Delph*, the deed of restrictions for Sandy Beach Subdivision does not contemplate extending use of the easement, such as by future driveway "tie-on's" to Sandy Beach Lane. Furthermore, testimonies of the original developer and lot owners confirm that Sandy Beach Subdivision was developed in such a way as to prevent other landowners from accessing the road, *i.e.*, the retention of the one-foot strip of land on the side of Sandy Beach Lane which adjoined other properties.

Indeed, there is no evidence to suggest that the increased access to the road by adjacent landowners was contemplated by the parties and ample evidence to the contrary. Significantly, the landowners in the adjacent, more recently-developed Taylor's Landing and Sandy Beach II Subdivisions would be under no obligation to maintain Sandy Beach Lane, as they are not subject to the provisions of the Sandy Beach Subdivision's deed of restrictions. They would, in essence, benefit from the use of Sandy Beach Lane without contributing to its maintenance, whilst foisting the additional burden on the subdivision lot owners. Additional access to Sandy Beach Lane by members of the public, *i.e.*, other landowners, would not only increase the wear and tear on the road itself, but would also interfere with the easement rights of the lot owners. Accordingly, the burden on the easement would be unreasonable. *See Smith*, 554 S.W.2d at 413–14 ("The present status of our case law, then, is that extending the use of a roadway easement to land not a part of the original tract constitutes an unreasonable burden."). In sum, we agree with the trial court that the Carriers may not grant permission to other landowners to install driveways or culverts over the one-foot strip of land as a means of accessing Sandy Beach Lane.

### CONCLUSION

Sandy Beach Lane is a private roadway for the use and benefit of the Sandy Beach Subdivision lot owners. The Sandy Beach Lane easement cannot be extended or enlarged by allowing property owners in nearby, more recently-developed subdivisions to build driveways or culverts opening onto the road because this additional use of the road was not contemplated by the parties affected. For these reasons, the decision of the Court of Appeals is reversed and the order of the Breckinridge Circuit Court is reinstated.

All sitting. All concur.