RENDERED: JUNE 13, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0312-MR

DAVID COSTAS AND
JASMINE COSTAS                                                    APPELLANTS


                          APPEAL FROM KENTON CIRCUIT COURT
v.                        HONORABLE MARY K. MOLLOY, JUDGE
                          ACTION NO. 23-CI-00621


CITY OF PARK HILLS, KENTUCKY                                        APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  A. JONES, L. JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  David Costas and Jasmine Costas appeal from a February 13, 2024, order of the Kenton Circuit Court which denied their motion for summary judgment in a declaratory judgment action, and granted summary judgment in favor of the City of Park Hills, Kentucky.  We affirm.

## BACKGROUND

The Costases' residence is located in Park Hills, Kentucky, a home rule city in Kenton County. The Costases acquired their residence in 2020 and found it difficult to park on the street adjacent thereto. In 2022, the Costases sought to place a parking pad on the right-of-way at the front of their residence to avoid parking on the street. The Kenton County Planning and Development Services agency informed them that since the proposed pad was in the City's right-of-way, their project was subject to various ordinances of the City of Park Hills.[1] On October 2, 2022, the Costases submitted an Application for Encroachment Permit for their proposed parking pad, and described therein their plan to pave a 45-foot length of the grass between the sidewalk and curb, with no cuts to the curb.

The permit application was brought up for business at the Park Hills City Council meeting on October 10, 2022. After much discussion about the proposed parking pad, including parking and safety issues, the application was tabled and referred to the Infrastructure Committee. When the Costases' attorney observed that their encroachment application met the requirements of the ordinance, he was informed that approval of the parking pad was within the City's discretion.

---

[1] The controlling ordinances look to Article V, Chapter 52 of the Park Hills Code of Ordinances, hereinafter referred to at times in this Opinion as the "City Code."

The Infrastructure Committee held a meeting on October 19, 2022, at which the Costases presented their design plan and articulated the need for the proposal. The meeting minutes reflect that a discussion ensued for about 41 minutes over the Committee's various concerns, including safety issues, regarding the parking pad application. The minutes also show the Committee felt a complicating factor was that the site was near a stop sign on the street.

At the next City Council meeting on October 24, 2022, Jasmine Costas spoke before the Council about their proposed project's merits, and she raised questions about how other properties in Park Hills received approval for parking pads. The minutes reflect that she was provided answers, but no decision on the project was reached. Following the meeting, the Costases apparently made a demand on the City Clerk for issuance of the permit. On October 25, 2022, City Clerk Julie A. Alig sent a letter to the Costases' attorney informing him that the encroachment permit application remained pending before the City Council and would be taken up at the next regular meeting when the Infrastructure Committee would report. The next day, October 26, 2022, the Park Hills City Attorney, Daniel R. Braun, sent a letter to the Costases' attorney regarding the project. First, in response to the Costases' open records requests, he noted that no other encroachment permit applications existed because other parking pads had been installed by the City as part of a city road project. Secondly, he stated in response

-3-

to the Costases' demand to the City Clerk that the permit be issued "immediately," that the Costases' interpretation and applicability of Section 52.03 of the City's Code was incorrect. He added that a resolution had been previously approved by the City Council in 1990 that provided approval of parking pads rests at the sole discretion of the City Council.

At the City Council meeting on December 12, 2022, Commissioner Elkins, who chaired the Infrastructure Committee, reported to the City Council that the Committee was not in favor of approving the Costases' parking pad application due to safety concerns. Further discussions were undertaken by the Council, including whether the procedure for obtaining permission for a parking pad was governed by Chapter 52 of the City Code or the 1990 resolution, which had become out-of-date, regarding how parking pads were to be approved.[2] The matter was again tabled because the City Attorney was not present at the meeting. The City Council ultimately addressed the issue at their meeting on February 13, 2023. After substantial discussion, a majority of the Council voted 5-1 to deny the Costases' Application for Encroachment Permit.

On April 7, 2023, the Costases filed a complaint in the Kenton Circuit Court under Kentucky Revised Statutes (KRS) 418.040 and 418.045, for a

---

[2] David Costas and Jasmine Costas' attorney noted during the meeting that the resolution called for approval by the City of Park Hills Building Inspector and at the time of their proposal, the City of Park Hills no longer employed a building inspector.

declaration of rights concerning the parking pad and for an order requiring the City to issue the Costases a permit to construct the pad. The Costases moved for summary judgment on November 13, 2023, and filed a memorandum in support thereof. Their primary argument was that the permit for alterations to the right-of-way should have been automatically granted under the plain language of the Park Hills city ordinance governing permits. Section 52.03(A) states, "[s]uch permit shall be granted pursuant to application thereof or made to the Clerk/Treasurer in such manner and in such form as he or she may prescribe." The Costases contended the word "shall" meant the issuance of the permit was mandatory, not discretionary by the City. They further argued that the City's exercise of discretion in denying their application was arbitrary in violation of Section 2 of the Kentucky Constitution.

On December 8, 2023, the City filed a reply and a Counter Motion for Summary Judgment. The City argued that the Costases' permit was given thorough vetting and consideration, so the allegations of arbitrariness were unfounded. The City asserted it has authority to exercise discretion and control over public rights-of-way. Further, the City took safety concerns into consideration in denying the application. The City also argued that the Costases misinterpreted the applicability of Section 52.03 of the Code, as it pertained to street and utility cuts, not right-of-way pads or encroachment permits. The Kenton

Circuit Court agreed with the City's interpretation of its ordinance, as well as the 1990 resolution granting the City the discretion to approve the installation of parking pads. The Court found no evidence that the decision was arbitrary, nor that it violated Section 2 of the Kentucky Constitution. The court granted the City's counter motion for summary judgment, and this appeal followed.

## STANDARD OF REVIEW

The standard of review on appeal when a trial court grants a motion for summary judgment is whether the trial court correctly found that there exists no genuine issue as to any material fact and that the movant was entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 482 (Ky. 1991). The evidence must be viewed "in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor." *First Fed. Sav. Bank v. McCubbins*, 217 S.W.3d 201, 203 (Ky. 2006). When evaluating a motion for summary judgment, the role of the circuit court is not to decide issues of fact, but rather to determine whether a real issue exists. *Commonwealth v. R.J. Corman Railroad Co.*, 116 S.W.3d 488, 497 (Ky. 2003). Because summary judgment looks to questions of law and not disputed material facts, an appellate court need not defer to the trial

court's decision and our review is *de novo*. *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 234 (Ky. 2013).

## ANALYSIS

To begin, a brief discussion of the parties respective legal interests in the real property at issue is warranted. As noted, this dispute looks to real property owned by the Costases and subject to a public right-of-way interest therein held by the City of Park Hills. The record reflects that a subdivision plat was recorded in the Kenton County Clerk's Office in 1925 depicting Audubon Road as a dedicated street to the City of Park Hills, which extends a public right-of-way onto the property acquired by the Costases in 2020.[3] Record at 61. And, the Costases' deed reflects that their property is subject to all public roads and rights-of-way. Record at 63-64. Neither party disputes these facts.

Under Kentucky law, a right-of-way is an easement which effectively grants one the right to use property owned by another. *Schmid v. Anderson*, 222 S.W.2d 931, 933 (Ky. 1949). The granting of an easement does not convey fee simple title to the land, but rather the right of use. *Id.*

An easement is generally described as an "incorporeal hereditament to which corporeal property is rendered subject." *Illinois Cent. R.R. Co. v. Roberts*,

---

[3] Customarily in Kentucky, public rights-of-way adjacent to city streets are used for public utilities, sidewalks, sewers and drainage flow, streetlights, traffic signage, curbs, and any other public purpose.

-7-

928 S.W.2d 822, 826 (Ky. App. 1996). An easement is comprised of a dominant tenement and a servient tenement. *Id.* at 825. The property "owner who enjoys the privilege to use another's land is said to possess the dominant tenement, while the owner burdened with the privilege is said to possess the servient tenement." *Id.* In this case, the servient tenement is the Costases' property and the dominant tenement is the dedicated street adjacent to the Costases' property, owned and maintained by the City. Again, this case looks to a public right-of-way held by the City across property owned by the Costases. Here the City has the right to use as opposed to ownership of the Costases property. *Bickel Co. v. Texas Gas Transmission Corp.*, 336 S.W.2d 345, 347 (Ky. 1960). Contrary to arguments raised by the parties, the City does not own the property in question, but rather holds a right or interest therein. *Id.*

In Kentucky, our Courts have long recognized the principle of common-law dedication of private property to a public purpose. *Nash v. Campbell Cty. Fiscal Court*, 345 S.W.3d 811, 819-19 (Ky. 2011); *Herron v. Boggs*, 582 S.W.2d 643, 644 (Ky. 1979); *Cassell v. Reeves*, 265 S.W.2d 801, 802 (Ky. 1954); *City of Middlesboro v. Kentucky Utilities Co.*, 35 S.W.2d 877, 881 (Ky. 1931); *Newland v. Schriver*, 19 S.W.2d 963, 963 (Ky. 1929); *Volpenheim v. Westerfield*, 287 S.W. 545, 546 (Ky. 1926). A dedication of property to the public is broadly

defined as "a donation . . . of property to the public use by the owner."  22B AM. JUR. 2d *Dedication* § 1 (2025).

One prevalent type of common-law dedication is dedication by estoppel.  A common-law dedication by estoppel may be effectuated by subdividing land into lots and laying out streets, roads, and other open areas on a plat.  *Kircheimer v. Carrier*, 446 S.W.3d 224, 228-29 (Ky. 2014).  Such common-law dedication is generally referred to as dedication by estoppel involving plat.  *Id.*  Such an offer to dedicate requires neither formal public acceptances nor general use by the public; rather, a dedication by estoppel involving plat may be consummated by the selling of a lot with reference to the subdivision plat. *Volpenheim*, 287 S.W. at 546; *Cassell*, 265 S.W.2d at 802; *Hougland v. Perdue*, 361 S.W.2d 291, 292 (Ky. 1962).  A dedication effected by platting plus the sale of lots by reference thereto constitutes an irrevocable dedication.  *Kircheimer*, 446 S.W.3d at 228-29.  It does not require any formal governmental action by the state, county, or city but rather rests upon the common-law doctrine of dedication by estoppel.

With this legal background in mind, the record reflects that the Costases acquired their property in 2020, subject to the City's public right-of-way as set out in the 1925 Plat that is clearly referenced in the Costases' Deed.  Based on our review, we conclude that Chapter 52 and the relevant sections therein of the

Park Hills Code of Ordinances is the controlling authority for the issues raised in this appeal.

The version of Chapter 52 of the City Code in effect when the Costases filed their application for an encroachment permit was styled "Street and Utility Cutting." Record at 81.[4] Section 52.01 is titled "Excavation; Permit Required." The ordinance provides in Section 52.01(A):

> No person, entity or utility shall cut, excavate, damage or in any way alter any road, street, sidewalk, or right-of-way within the city without first obtaining a permit for such action from the Clerk/Treasurer. Nor shall any person, entity, or utility cause such action to be done or suffer, or permit any person, entity, or utility acting on his or her behalf or under his or her control to do such action, without first obtaining such permit.

Section 52.02 is titled "Conformance with Agencies Having Jurisdiction; Approval Required." Section 52.02(B) reads:

> It is the responsibility of the permittee to obtain approval from all governmental persons having jurisdiction before commencing any work.

Section 52.03 is titled "Requirements of Application for Permit," and Section 52.03(A) reads:

> Such permit shall be granted pursuant to application thereof or made to the Clerk/Treasurer in such manner

---

[4] This ordinance was amended by the City in November of 2023 in an apparent attempt to clarify for residents the City's policy for right-of-way encroachment. That amendment is not relevant to this appeal.

and in such form as he or she may prescribe. . . . A separate permit shall be required [for]:

> (3) Any other instance where any type of work is desired to be performed upon the right-of-way of any road. Such permit shall contain, among other things, a clause whereby the permittee agrees to be bound by the terms of this chapter.

The Costases' primary argument on appeal is that under a strict construction of Section 52.03(A), the City Council has no discretion regarding their application and must grant the parking pad permit once the application was filed and fees paid. We disagree.

Ordinances are interpreted according to the rules of statutory construction. *See Lafayette Football Boosters, Inc. v. Commonwealth*, 232 S.W.3d 550, 556 (Ky. App. 2007). In construing a city ordinance, the court will look to the ordinances as a whole to ascertain the intention of the lawmaking body and the purpose sought to be accomplished thereby. *City of Covington v. Sohio Petroleum Co.*, 279 S.W.2d 746, 748 (Ky. 1955).[5] The particular word, sentence or subsection under review must also be viewed in context rather than in a vacuum, so that other relevant parts of the legislative act must be considered in determining the legislative intent. *Jefferson Cty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 719 (Ky.

---

[5] This case was disapproved on other grounds by *McClennan v. Louisville Water Company*, 351 S.W.2d 197, 198-99 (Ky. 1961).

2012). "No single word or sentence is determinative, but the statute as a whole must be considered." *Cosby v. Commonwealth*, 147 S.W.3d 56, 58-59 (Ky. 2004). Thus, one must read the applicable ordinances of the City Code as a whole with a view to ascertaining their purpose.

To determine legislative intent, we look first to the language of the enactment, giving the words their plain and ordinary meaning. *Wade v. Poma Glass & Specialty Windows, Inc.*, 394 S.W.3d 886, 888 (Ky. 2012). Only if the ordinance is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids. *Id.* Examining the ordinances as a whole, it is clear that the City intended to control what is done with the public right-of-way and other property owned by the City. Obviously, the plain meaning of the word permit implies getting permission from someone in charge to get or do something. The ordinances describe a process whereby construction plans are submitted to the City and the application requires detailed specifications. Section 52.02 states the permittee must obtain approval from all governmental persons. If no review is required, this ordinance has no meaning. "Under accepted principles of statutory interpretation, a court presumes the enacting body meant for all parts of an enactment to have meaning and to be able to 'harmonize with related statutes [or ordinances].'" *Schell v. Young*, 640 S.W.3d 24, 35 (Ky. App. 2021) (quoting *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011)).

While not controlling, the City cites to a 1990 resolution passed by the City Council that addressed the procedures for the City Council to approve parking pad permits. There is no evidence in the record that any other parking pad permit in Park Hills was granted under the Costases' strict interpretation of Chapter 52 of the ordinances. In this case, the City Council voted against the application, primarily based on legitimate safety concerns. We agree with the City that the word, "shall," as used in Section 52.03(A), does not transform the permit process in Chapter 52 of the City Code into a rubber stamp for any citizen request to encroach upon a public right-of-way in the City of Park Hills. To do so would defeat the purpose of the right-of-way, the ordinance, and hinder public safety.

In this case, the Costases' application was vetted thoroughly by the City Council which voted it down because of its adverse effects on a public right-of-way. Albeit for different reasons than set out by the circuit court, we conclude the City Council complied with its applicable ordinances.

The Costases also argue on appeal that the City's power over the decisions regarding the right-of-way in front of their property violates Section 2 of the Kentucky Constitution which denies "absolute and arbitrary power" over the lives, liberty, and property of Kentucky citizens. They cite a longstanding rule under that provision that:

> [M]unicipal ordinances, placing restrictions upon lawful conduct or the lawful use of property, must, in order to be

valid, specify the rules and conditions to be observed in such conduct or business; and must admit of the exercise of the privilege of all citizens alike who will comply with such rules and conditions; and must not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities between citizens who will so comply.

*City of Monticello v. Bates*, 183 S.W. 555, 558 (1916). The Costases rely on case law that states that for the exercise of municipal action, cities are required to promulgate standards by which the discretion of the city is controlled. *See cf. Bruner v. City of Danville*, 394 S.W.2d 939, 940 (Ky. 1965).

Based on our review, we find the legal authority relied upon by the Costases looks primarily to applying planning and zoning standards, which is not an issue here. More importantly, the Costases fail to acknowledge that their property is subject to a public right-of-way interest held by the City of Park Hills, which they accepted in the deed when acquiring their property in 2020. To the extent that the Costases' proposed encroachment interferes with the City's use of the right-of-way adjacent to a public street, especially where traffic and safety concerns are at issue, such an encroachment may be denied under the ordinances. The Costases have failed to establish how the City's exercise of sound discretion to deny the permit application is arbitrary. Accordingly, the circuit court correctly held that the City did not violate Section 2 of the Kentucky Constitution by denying the Costases' permit application under the facts of this case.

For the foregoing reasons, we affirm the February 13, 2024, Order of the Kenton Circuit Court granting summary judgment for the City of Park Hills.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

R. Kim Vocke
Covington, Kentucky

BRIEF FOR APPELLEE:

Daniel R. Braun
Edgewood, Kentucky